VERA H. QUICK v. W. B. QUICK

No. 163A81

(Filed 4 May 1982)

1. **Divorce and Alimony § 17.3; Rules of Civil Procedure § 52.1— sufficiency of order awarding permanent alimony—findings of fact supporting amount of alimony inadequate**

In an action concerning the amount of alimony to be awarded, the trial court's findings of fact were inadequate to support its conclusion under G.S. 1A-1, Rule 52(a). G.S. 50-16.5(a) lists a series of circumstances for the trial judge to consider in determining the amount of an alimony award, and the court's conclusions must be based upon factual findings sufficiently specific to indicate that the trial judge properly considered the six statutory factors enumerated and the rules which have evolved from our case law. Rule 52(a) requires *specific findings* of the ultimate facts established by the evidence, admissions and stipulations which are determinative of the questions involved in the action and essential to support the conclusions of law reached. Therefore, where there was (1) no finding as to the total value of either the plaintiff's or defendant's "estate," (2) inadequate findings concerning the "earnings" of the parties, (3) inadequate findings of fact about the earning capacities and conditions of the parties, (4) no mention of the accustomed standard of living of the parties, and (5) no findings to indicate whether the trial court believed that defendant was deliberately depressing his income or whether he was indulging in excessive spending in disregard of his marital obligation, the order of the trial court must be vacated and a new hearing held so that the trial court can make adequate and appropriate findings of fact and conclusions of law and can set the amount of permanent alimony. To the extent that *Eudy v. Eudy,* 288 N.C. 71, 215 S.E. 2d 782 (1975) indicates that Rule 52(a) does not apply to actions involving the *amount* of alimony, it is overruled. This holding also applies with equal force to actions involving determination of *amount* of both alimony *pendente lite* and child support.

2. **Process § 6— subpoena duces tecum—appropriateness for obtaining corporate records in divorce action**

A corporation, even one closely held, is recognized as a separate legal entity and parties engaged in litigation which is personal in nature should not be allowed to obtain corporate records which have no relation to the issues before the court. However, where a substantial portion of a party's total worth is stock in a closely held corporation, certain information from the corporation's business records may well be relevant to the personal litigation involving the party.

3. **Divorce and Alimony §20.3— insufficient findings to support award of attorney's fees**

Where the trial court concluded that plaintiff was unable to pay her attorney's fees but did not support the conclusion with findings of fact, the portion of the order awarding fees must be vacated and on rehearing, the trial

court must make sufficient findings of fact to support a conclusion whether plaintiff, as litigant, is able to meet defendant, as litigant, on substantially even terms with respect to representation by counsel.

**4. Divorce and Alimony § 21— failure to make alimony payments—stay of contempt proceedings pending appeal**

The Supreme Court is unable to hold a supporting spouse in contempt for violating a trial court order by failing to make alimony payments ordered therein since the Supreme Court does not hear matters requiring factual findings. The ultimate answer to a dependent spouse's dilemma concerning a supporting spouse's virtual immunity from support obligations while cases work their way through the appellate process must come from the legislature.

ON discretionary review of the decision of the Court of Appeals, 53 N.C. App. 248, 280 S.E. 2d 482 (1981), which affirmed the order of *Barnette, Judge*, entered at the 29 January 1980 Session of District Court, WAKE County. The order was signed out of term on 8 April 1980 by consent of the parties.

Our principal task on this appeal is to determine whether the trial court made findings of fact sufficient to support its order for permanent alimony.

*Brenton D. Adams for plaintiff-appellee.*

*Tharrington, Smith & Hargrove, by J. Harold Tharrington and Carlyn G. Poole, for defendant-appellant.*

CARLTON, Justice.

I.

Plaintiff and defendant were married in 1945, when they both were twenty years of age. Although they had few financial resources at the time of their marriage, defendant enjoyed tremendous success in his business and the parties later enjoyed an expensive standard of living. They were separated in 1978 and were divorced in 1979.

This appeal involves only plaintiff's claims for permanent alimony and attorney's fees. The propriety of a prior award of alimony *pendente lite* and attorney's fees is not before us.

A consent order was entered into by the parties and signed by Judge Parker on 8 March 1978, in which defendant agreed to pay plaintiff alimony *pendente lite* in the amount of $1,500.00 per

month beginning 19 September 1978. Defendant further agreed to pay plaintiff's attorney the sum of $1,000.00 for services rendered prior to the consent order.

In the trial court the parties stipulated (1) that plaintiff is substantially dependent upon defendant for maintenance and support and is a dependent spouse within the meaning of G.S. 50-16.1(3), (2) that defendant has sufficient means and income to provide support for plaintiff and is a supporting spouse within the meaning of G.S. 50-16.1(4), (3) that plaintiff has a ground for alimony as provided in G.S. 50-16.2, and (4) that plaintiff is entitled to recover judgment against defendant for permanent alimony in such amount as might be established by the court.

The matter came on for hearing before Judge Barnette on 29 January 1980. Various documents concerning the parties' financial affairs were introduced and five witnesses, including plaintiff, defendant and defendant's accountant, gave extensive testimony. After hearing all the evidence the trial judge made the following findings of fact:

1. That the plaintiff is unemployed and has been during the marriage with the defendant except as a part-time book-keeper and clerical worker in the defendant's business.

2. That since the divorce the plaintiff is now entitled to $2,700.00 per year as her ½ share of rents from property she and the defendant own as tenants in common.

3. That the defendant and the plaintiff own their family residence on 310 Carmen Avenue, Jacksonville, N.C. as tenants in common. The value of this property is unknown.

4. That the plaintiff and the defendant also own two buildings on New Bridge Street in Jacksonville, North Carolina as tenants in common. The value of these buildings is unknown.

5. That the plaintiff owns one hundred shares of Carmen Realty Company. These shares are worth slightly in excess of $6,000.00.

6. That the plaintiff's reasonable monthly living expenses are $1,500.00 per month.

7. That the defendant has retired from active work in his business and is not presently employed. He retired for health reasons and has been retired for some time. This had nothing to do with the separation and subsequent divorce.

8. That the defendant now has a net monthly income of $2,151.00.

9. That the defendant's reasonable monthly living expenses are approximately $3,800.00.

10. That the defendant owns property mentioned in Findings of Fact Numbers 3 and 4 as tenants in common with the plaintiff.

11. That the defendant owns the remaining 2,900 shares of Carmen Realty Company. His shares are worth approximately $174,000.00.

12. The plaintiff needs and the defendant can afford to pay the plaintiff the sum of $1,275.00 per month as permanent alimony. Such sum is reasonable considering the respective incomes, estates and expenses of the parties.

13. That even with the alimony pendente lite she is receiving, the plaintiff is still unable to pay her attorney's fees.

14. That it has been reasonably necessary for the plaintiff's attorney to spend twenty hours in preparation for trial and in trial of this action for permanent alimony since March 8, 1979.

15. That the plaintiff's attorney has performed valuable services for the plaintiff including interviewing witnesses, conferences with the plaintiff, legal research, conducting deposition of the defendant, and appearing in Court on the plaintiff's behalf.

16. That the rate of $50.00 per hour is a reasonable rate for the plaintiff's attorney to charge.

Based on these findings Judge Barnette concluded that plaintiff was entitled to receive as permanent alimony the sum of $1,275.00 per month and to receive $1,000.00 for attorney's fees.

From the foregoing, defendant appealed to the Court of Appeals. That court, in an opinion by Judge Webb in which Judges Hedrick and Arnold concurred, affirmed the trial court. We allowed defendant's petition for discretionary review on 1 December 1981.

## II.

[1]  We are first concerned with the sufficiency of the trial court order awarding plaintiff permanent alimony. Specifically, we must examine the trial court's findings of fact to determine whether they are adequate to support its conclusion of law that plaintiff is entitled to receive $1,275.00 each month from defendant as permanent alimony.

Defendant contends that the trial court abused its discretion by ordering him to pay plaintiff an amount which, in addition to his own reasonable living expenses, will cause him to divide and deplete his estate within a short period of time, *Beall v. Beall,* 290 N.C. 669, 228 S.E. 2d 407 (1976). Plaintiff argues that the amount of alimony is a matter for the trial judge's sound discretion and is not reviewable on appeal absent a manifest abuse of discretion, citing *Sayland v. Sayland,* 267 N.C. 378, 148 S.E. 2d 218 (1966), and contends that this Court held in *Eudy v. Eudy,* 288 N.C. 71, 215 S.E. 2d 782 (1975), that no findings of fact are required to support the amount of alimony awarded.

We find the answer to this issue in our Rules of Civil Procedure (codified as Chapter 1A of our General Statutes). Rule 52(a)(1) requires that "in all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." The amount of alimony is determined by the trial court without a jury. 2 R. Lee, *North Carolina Family Law* § 139 (4th ed. 1980). Our Rules of Civil Procedure apply to all cases of a civil nature brought in the superior and district courts unless a differing procedure is prescribed by statute. G.S. § 1A-1, Rule 1 (Cum. Supp. 1981). Actions for permanent alimony are unquestionably of a civil nature, and there is no "differing procedure" prescribed by statute which governs the action.[1] *Gardner v. Gardner,* 294 N.C. 172, 240 S.E. 2d

---

1. We are here concerned with an action for permanent alimony. A "differing procedure" for alimony *pendente lite* actions is discussed *infra.*

399 (1978). Under Rule 52(a), three separate and distinct acts are required of the trial court. It must (1) find the facts specially, (2) state separately the conclusions of law resulting from the facts so found, and (3) direct the entry of the appropriate judgment. *Cf. Woodard v. Mordecai*, 234 N.C. 463, 67 S.E. 2d 639 (1951) (similar duties under prior law). In this case we are concerned with the first of these requirements, the finding of facts.

Rule 52(a) does not, of course, require the trial court to recite in its order all evidentiary facts presented at hearing. The facts required to be found specially are those material and ultimate facts from which it can be determined whether the findings are supported by the evidence and whether they support the conclusions of law reached. "Findings of fact may be defined as the written statement of the ultimate facts as found by the court, signed by the court, and filed therein, and essential to support the decision and judgment rendered thereon." 76 Am. Jur. 2d Trial § 1251 (1975). In other words, a proper finding of facts requires a specific statement of the facts on which the rights of the parties are to be determined, and those findings must be sufficiently specific to enable an appellate court to review the decision and test the correctness of the judgment. 89 C.J.S. Trial § 627 (1955).

In *Woodard v. Mordecai*, 234 N.C. at 470, 472, 67 S.E. 2d at 644, 645, this Court explained:

> There are two kinds of facts: Ultimate facts, and evidentiary facts. Ultimate facts are the final facts required to establish the plaintiff's cause of action or the defendant's defense; and evidentiary facts are those subsidiary facts required to prove the ultimate facts. (Citations omitted.) G.S. 1-185 requires the trial judge to find and state the ultimate facts only. (Citations omitted.)
>
> . . . .
>
> . . . Ultimate facts are those found in that vaguely defined area lying between evidential facts on the one side and conclusions of law on the other. (Citations omitted.) In consequence, the line of demarcation between ultimate facts and legal conclusions is not easily drawn. (Citation omitted.) An ultimate fact is the final resulting effect which is reached by processes of logical reasoning from the evidentiary facts.

(Citations omitted.) Whether a statement is an ultimate fact or a conclusion of law depends upon whether it is reached by natural reasoning or by an application of fixed rules of law. (Citations omitted.)

In summary, while Rule 52(a) does not require a recitation of the evidentiary and subsidiary facts required to prove the ultimate facts, it does require *specific findings* of the ultimate facts established by the evidence, admissions and stipulations which are determinative of the questions involved in the action and essential to support the conclusions of law reached.

As stated by this Court, per Justice Exum, in *Coble v. Coble*, 300 N.C. 708, 712, 268 S.E. 2d 185, 189 (1980):

The purpose of the requirement that the court make findings of those specific facts which support its ultimate disposition of the case is to allow a reviewing court to determine from the record whether the judgment — and the legal conclusions which underlie it — represent a correct application of the law. The requirement for approximately detailed findings is thus not a mere formality or a rule of empty ritual; it is designed instead "to dispose of the issues raised by the pleadings and to allow the appellate courts to perform their proper function in the judicial system." *Montgomery v. Montgomery*, 32 N.C. App. 154, 158, 231 S.E. 2d 26, 29 (1977); *see, e.g., Crosby v. Crosby*, 272 N.C. 235, 158 S.E. 2d 77 (1967).

The requirement of special fact-finding did not begin with implementation of our present Rules of Civil Procedure. In *Martin v. Martin*, 263 N.C. 86, 138 S.E. 2d 801 (1964) (per curiam), this Court reviewed a trial court order which directed alimony *pendente lite* and child support payments. The trial court made only limited findings of act about the defendant's financial circumstances. The hearing had been on affidavits and defendant submitted his own uncontradicted affidavit indicating his dire financial situation. However, no findings of fact concerning the matters in the affidavit were made. This Court stated, in remanding to the trial court:

If the facts set out in defendant's affidavit are true, the payments required of defendant are clearly excessive, unrealistic and beyond the limits of judicial discretion. *The*

*court made no specific findings with respect to the matters set out in the affidavit, and it does not appear whether they were considered.*

263 N.C. at 87-88, 138 S.E. 2d at 802 (emphasis added).

The amount of alimony is determined by the trial judge in the exercise of his sound discretion and is not reviewable on appeal in the absence of an abuse of discretion. *Sayland v. Sayland,* 267 N.C. 378, 148 S.E. 2d 218. There can be no review of whether a trial judge abused his discretion other than by appeal. 2 R. Lee, *supra* at § 139. In determining the amount of alimony the trial judge must follow the requirements of the applicable statutes. Consideration must be given to the needs of the dependent spouse, but the estates and earnings of both spouses must be considered. "It is a question of fairness and justice to all parties." *Beall v. Beall,* 290 N.C. at 674, 228 S.E. 2d at 410. Unless the supporting spouse is deliberately depressing his or her income or indulging in excessive spending because of a disregard of the marital obligation to provide support for the dependent spouse, the ability of the supporting spouse to pay is ordinarily determined by his or her income at the time the award is made. If the supporting spouse is deliberately depressing income or engaged in excessive spending, then capacity to earn, instead of actual income, may be the basis of the award. *See Conrad v. Conrad,* 252 N.C. 412, 113 S.E. 2d 912 (1960); *Harris v. Harris,* 258 N.C. 121, 128 S.E. 2d 123 (1962).

The statute which controls the determination of alimony is G.S. 50-16.5. That statute provides that "[a]limony shall be in such amount as the circumstances render necessary, having due regard to the (1) estates, (2) earnings, (3) earning capacity, (4) condition, (5) accustomed standard of living of the parties, and (6) other facts of the particular case." G.S. § 50-16.5(a) (1976) (numbered parentheses added).

In other words, the statute requires a conclusion of law that "circumstances render necessary" a designated amount of alimony. Our case law requires conclusions of law that the supporting spouse is able to pay the designated amount and that the amount is fair and just to all parties. See *Williams v. Williams,* 299 N.C. 174, 261 S.E. 2d 849 (1980) for guidelines for determining whether a spouse is "dependent" or "supporting." All of these

conclusions must themselves be based upon factual findings suffi-
ciently specific to indicate that the trial judge properly con-
sidered the six statutory factors enumerated above and the rules
which have evolved from our case law. Without findings on the
above-listed factors, an appellate court cannot review the amount
of alimony awarded to determine whether the trial judge abused
his discretion. There would be no way to know which factors the
trial judge considered and which he did not consider. There would
be no way to determine what evidence the trial judge believed
and what evidence he found incredible.

As Justice Exum noted in *Coble*:

In the absence of such findings, this Court has no means of
determining whether the order is adequately supported by
competent evidence. *Crosby v. Crosby, supra.* It is not
enought that there may be evidence in the record sufficient
to support findings which *could have been made.* The trial
court must itself determine what pertinent facts are actually
established by the evidence before it, and it is not for an ap-
pellate court to determine *de novo* the weight and credibility
to be given to evidence disclosed by the record on appeal.
*Knutton v. Cofield,* 273 N.C. 355, 160 S.E. 2d 29 (1968); *Davis
v. Davis,* 11 N.C. App. 115, 180 S.E. 2d 374 (1971).

300 N.C. at 712-13, 268 S.E. 2d at 189.

We now apply these principles to the case before us. The
only facts found by the trial court which relate to the statutory
factors listed above were: (1) Plaintiff presently has a yearly
income of $2,700 from rental of property owned jointly with de-
fendant. (2) Plaintiff's estate includes stock worth $6,000, rental
property owned jointly with defendant, value unknown, and an in-
terest in the family home, value unknown. (3) Plaintiff has
reasonable monthly living expenses of $1,500 per month. (4)
Defendant has a net monthly income of $2,151. (5) Defendant's
estate includes stock, worth $174,000, rental property owned
jointly with plaintiff, value unknown, and an interest in the family
home, value unknown. (6) Defendant's reasonable monthly living
expenses are $3,800. The trial court then concluded that "the
defendant can afford to pay to the plaintiff the sum of $1,275 per
month as permanent alimony. Such sum is reasonable considering
the respective incomes, estates, and expenses of the parties." The

trial court made only limited findings concerning the estates of the parties, the first of the enumerated statutory factors.

There is no finding as to the total value of either the plaintiff's or defendant's "estate." It found that plaintiff and defendant owned certain real properties in Jacksonville as tenants in common, but then found that their value was "unknown." We note that there is testimony in the record concerning the value of these properties. Also, there is no finding concerning the likelihood that these properties might be sold or rented in order to provide funds for the use of both parties in meeting their living expenses. Finding of Fact No. 5 is that plaintiff owns 100 shares of stock in Carmen Realty Company, but there is no finding on whether this stock, being stock of a closely held corporation, is marketable and therefore of real value to plaintiff. Finding of Fact No. 11 is that defendant owns the remaining 2,900 shares in the corporation and that these shares have a value of $174,000. This finding is highly questionable in face of testimony that the corporation owned a certificate of deposit worth $108,000 and various other real properties which were apparently unencumbered. Additionally, there is no finding concerning the income-producing capability of defendant's corporate stock. There is no finding concerning the marketability of the stock or the ability of defendant to liquidate corporate assets and to use those funds to provide alimony. We also note that one exhibit indicated that the net worth of defendant and Carmen Realty in October of 1977 was $1,179,511.38 and that another indicated a net worth of approximately $642,305 in September of 1978. The findings made by the trial court do not reveal what the trial court considered to be the value of defendant's corporation.

Findings concerning the "earnings" of the parties are also inadequate. There are no findings that plaintiff is presently unemployed and that she will actually receive the rental payments. We note in the record some evidence to the effect that the property in question was not being rented at the time of the hearing. The mere finding of defendant's monthly net income is insufficient in light of the abundant testimony in the record concerning the various sources of his income. This is particularly true in light of some evidence that all of his income may not be permanent.

The findings of fact about the earning capacities and conditions of the parties are similarly inadequate. There is a finding that defendant retired from his business for health reasons unrelated to his marital problems, but there is no finding as to whether he might work again. We note some evidence in the record that defendant has lost the benefit of some permanent disability payments. As noted above, there is no finding to indicate whether defendant could arrange his corporate affairs in a way which would increase his personal earnings. Moreover, there are no findings at all concerning the plaintiff's earning capacity or health condition. There is also no finding about the plaintiff's living conditions. The record discloses that her adult daughter resided with her and that some of plaintiff's itemized living expenses were for the benefit of both. Without a factual finding about this condition, we are unable to determine whether the trial court gave this factor any consideration at all.

The fifth of the statutory factors, the accustomed standard of living of the parties, is not mentioned at all in the trial court's findings. We stressed the critical importance of this factor in determining whether a spouse is "dependent" in our recent opinion in *Williams v. Williams*, 299 N.C. 174, 261 S.E. 2d 849. It is no less important in determining the *amount* of alimony. In *Williams*, we said:

> The . . . phrase clearly means more than a level of mere economic survival. Plainly, in our view, it contemplates the economic standard established by the marital partnership for the family unit during the years the marital contract was intact. It anticipates that alimony, to the extent it can possibly do so, shall sustain that standard of living for the dependent spouse to which the parties together became accustomed.

299 N.C. at 181, 261 S.E. 2d at 855. The trial court erred in omitting findings concerning this factor. This record is replete with testimony concerning both the expensive lifestyle of the parties just several years prior to the separation and their more modest living circumstances at the time of the hearing.

Finally, the order is without any findings of fact about several factors required for consideration by our case law. For example, there are no findings to indicate whether the trial court believed that defendant was deliberately depressing his income or

whether he was indulging in excessive spending in disregard of his marital obligation to support his dependent spouse. Absent those factors, our law requires that the ability of defendant to pay alimony is ordinarily determined by his income at the time the award is made.

The dearth of factual findings concerning defendant's estate is important for another reason. An alimony award must be fair and just to both parties. According to the findings made by the trial court defendant "can afford" to pay $1,275 in alimony out of his $2,151 monthly income. This leaves defendant only $876 with which to meet his reasonable monthly living expenses of $3,800. Under this set of facts, defendant must delve into his estate to make up the $2,924 monthly deficit and, within five years, will have depleted the "known value" of his estate. A spouse cannot be reduced to poverty in order to comply with an alimony decree. *Beall v. Beall,* 290 N.C. 669, 228 S.E. 2d 407. Under the limited facts found by the trial court, the setting of $1,275 as the amount of alimony appears to us to have been an abuse of discretion.

We hasten to add, however, that there is evidence in the record from which findings of fact *could* be made to support the amount awarded. There is also ample evidence which would support a lower award. What the evidence does *in fact* show is a matter for the trial court's determination, and its determination should be stated in appropriate and adequate findings of fact. Only when an appellate court knows what the facts are can it determine whether the amount awarded was within the trial court's discretion.

In light of the foregoing, it is necessary to order remand of this cause to the district court. As Justice (now Chief Justice) Branch observed in *Crosby v. Crosby,* 272 N.C. 235, 238-39, 158 S.E. 2d 77, 80 (1967), "when the court fails to find facts so that this Court can determine that the order is adequately supported by competent evidence . . . , then the order entered must be vacated and the case remanded . . . ."

In reaching our holding in this case, we are not inadvertent to the statement in *Eudy* that, "findings of fact are not required to support the trial judge's finding of the *amount* of alimony in actions for divorce from bed and board or in actions for alimony *pendente lite*." 288 N.C. at 80, 215 S.E. 2d at 788 (emphasis in

original). Suffice it to say that consideration of the application of G.S. 1A-1, Rule 52(a) to domestic actions was not given in that case. In light of our decision here to apply the rule to actions involving the *amount* of alimony, the quoted portion of the holding in *Eudy* is overruled.

We would also note that our holding here would apply with equal force to actions involving determination of *amount* of both alimony *pendente lite* and child support. It is true that Rule 52(a) does not apply in proceedings to determine the *amount* of alimony *pendente lite*. *Peoples v. Peoples*, 10 N.C. App. 402, 179 S.E. 2d 138 (1971); *Hatcher v. Hatcher*, 7 N.C. App. 562, 173 S.E. 2d 33 (1970). This is so because the Rules of Civil Procedure are of general application and do not abrogate the requirements of a statute of greater specificity. G.S. 50-16.8(f) sets out the procedure for applications for alimony *pendente lite*. It provides that, "When an application is made for alimony pendente lite, the party shall be heard orally, upon affidavit, verified pleading, or other proof, and *the judge shall find the facts from the evidence so presented.*" (Emphasis added.) Although Rule 52(a) does not apply to such an action, the fact-finding requirements of this statute are no less stringent than those required by Rule 52(a). Hence, our discussion here applies equally to proceedings for alimony *pendente lite*.

Our statement in *Coble* is especially pertinent here

Our decision to remand this case for further evidentiary findings is not the result of an obeisance to mere technicality. Effective appellate review of an order entered by a trial court sitting without a jury is largely dependent upon the specificity by which the order's rationale is articulated. Evidence must support findings; findings must support conclusions; conclusions must support the judgment. Each step of the progression must be taken by the trial judge, in logical sequence; each link in the chain of reasoning must appear in the order itself. Where there is a gap, it cannot be determined on appeal whether the trial court correctly exercised its function to find the facts and apply the law thereto.

300 N.C. at 714, 268 S.E. 2d at 190.

The findings of fact in the trial court order here are woefully inadequate; a serious "gap" exists. In order for the trial court ful-

ly to comply with the principles discussed in this opinion, the order of the trial court must be vacated and a new hearing held so that the trial court can make adequate and appropriate findings of fact and conclusions of law and can set the amount of permanent alimony. The stipulations of the parties of 28 December 1979—that plaintiff is the dependent spouse, that defendant is the supporting spouse, that plaintiff has a ground for alimony as provided in G.S. 50-16.2, and that plaintiff is entitled to permanent alimony—remain in full force and effect for the new hearing herein ordered.

In light of our disposition of this appeal, we need not consider other contentions argued by the parties. However, for the benefit of the trial court and parties on rehearing, we briefly discuss some of them below.

III.

[2]    On 10 January 1980, prior to the hearing on 29 January 1980, the Clerk of Superior Court issued subpoenas for the production of documents on defendant and his accountant. They were served on 15 January 1980. The subpoenas directed that numerous financial records pertaining to defendant, Carmen Realty Company and other businesses be brought to the hearing. On 23 January 1980, defendant moved to quash the subpoenas on the grounds that the subpoenas were unreasonable and oppressive and that the materials requested were irrelevant, redundant, and confidential, and that the materials sought belonged to third parties not joined in the action. The motion also alleged that the subpoenas constituted a "fishing expedition." The trial court ruled on the motion to quash by allowing the motion as to certain materials requested and denying the motion as to others. The result of the trial court ruling, defendant contends, was to allow improper use of a subpoena *duces tecum* in that the evidence concerning internal corporate affairs was allowed into evidence at the hearing and unfairly prejudiced his case. Defendant also argues that "the subpoena's broad sweep" of corporate and personal business records amounted to an impermissible fishing expedition.

Since this matter must be heard anew, we issue no opinion of the propriety of the trial judge's rulings on each specific item presented at the previous hearing. Suffice it to say, when the trial judge acts as trier of fact it is presumed that in reaching his

decision he considered only such evidence as was relevant. *E.g.,* *Anderson v. Allstate Insurance Co.*, 266 N.C. 309, 145 S.E. 2d 845 (1966); *Woodard v. Mordecai*, 234 N.C. 463, 67 S.E. 2d 639. Because new subpoenas must be obtained for the new hearing and because a trial judge is presumed to consider only the relevant evidence in reaching his decision, we decline to rule on defendant's assignment.

We refer the trial court and counsel to the extensive and excellent discussion of this device by Justice (later Chief Justice) Sharp in *Vaughan v. Broadfoot*, 267 N.C. 691, 149 S.E. 2d 37 (1966). While our Rules of Civil Procedure have been implemented since the issuance of that opinion, the principles enunciated therein remain viable.

We would also add these general observations: A corporation, even one closely held, is recognized as a separate legal entity in this jurisdiction. Parties engaged in litigation which is personal in nature, as here, should not be allowed to obtain corporate records which have no relation to the issues before the court. Such an attempt would certainly constitute a "fishing expedition" and subpoenas seeking such information should be quashed.

However, where a substantial portion of a party's total worth is stock in a closely held corporation, certain information from the corporation's business records may well be relevant to the personal litigation involving that party. This is particularly true where, as here, the trial court must determine the true worth and income of the parties. In such instances, the corporate records may be directly relevant to the issues at trial and are appropriate objects of a subpoena *duces tecum*. Mere fishing expeditions, however, must not be allowed.

## IV.

[3] We next address defendant's contention that the trial court erred in awarding plaintiff an attorney's fee of $1,000. "It is well-established in this jurisdiction that the purpose of the allowance of counsel fees is to enable the dependent spouse, *as litigant,* to meet the supporting spouse, *as litigant,* on substantially even terms by making it possible for the dependent spouse to employ adequate counsel." *Williams v. Williams*, 299 N.C. at 190, 261 S.E. 2d at 860 (1980) (emphasis in original).

For the same reasons discussed in section II of this opinion, we must also vacate this portion of the trial court order. The sole finding of fact to support the trial court determination of entitlement to counsel fees was, "That even with the alimony pendente lite she is receiving, the plaintiff is still unable to pay her attorney's fees." While denominated a finding of fact, this statement is really a conclusion of law. Hence, we are once again confronted with a conclusion of law and order unsupported by findings of fact. On rehearing, the trial court must make sufficient findings of fact to support a conclusion whether plaintiff, as litigant, is able to meet defendant, as litigant, on substantially even terms with respect to representation by counsel.

## V.

[4] On 2 March 1982, just prior to oral arguments in this Court on 8 March 1982, plaintiff filed papers in this Court seeking to have defendant held in contempt for violating the trial court order by failing to make the alimony payments ordered therein. Since this Court does not hear matters requiring factual findings, plaintiff's petition was denied. Plaintiff correctly noted that the district court was without jurisdiction to hear the contempt matter by virtue of this appeal. "The appeal stays contempt proceedings until the validity of the judgment is determined." *Joyner v. Joyner*, 256 N.C. 588, 591, 124 S.E. 2d 724, 727 (1962).

On oral argument, counsel for plaintiff urged this Court to devise a means to resolve this impasse because it occurs frequently to the detriment of dependent spouses. Counsel correctly argued that supporting spouses have a lengthy period of virtual immunity from support obligations while cases work their way through the appellate process. While the ultimate answer to this dilemma must come from the Legislature, we are not insensitive to counsel's concern and turn to the prevailing applicable principles.

If the order from which an appeal is taken is upheld by the appellate court, wilful failure to comply with the order during pendency of the appeal is punishable by contempt on remand. *Joyner v. Joyner*, 256 N.C. 588, 124 S.E. 2d 724; *Beall v. Beall*, 290 N.C. 669, 228 S.E. 2d 407. It was said in *Joyner*, "taking an appeal does not authorize a violation of the order. One who wilfully violates an order does so at his peril. If the order is upheld by the

appellate court, the violation may be inquired into when the case is remanded to the [trial] court." 256 N.C. at 591, 124 S.E. 2d at 727.

It has also been held that an order for the payment of alimony, alimony *pendente lite*, child support and counsel fees is a money judgment under the provisions of G.S. 1-289. Therefore, an appeal does not stay execution against the defendant's property for the collection of judgment unless a stay or supersedeas is ordered. *Vaughan v. Vaughan*, 211 N.C. 354, 190 S.E. 492 (1937); *Joyner v. Joyner*, 256 N.C. 588, 124 S.E. 2d 724.

> An appeal does not stay execution on the judgment unless the supporting spouse puts up an execution bond. Where no stay of execution bond has been executed, apparently the dependent spouse may enforce the court order by ordinary execution against the property of the supporting spouse to collect the judgment even though the case has been appealed.

2 R. Lee, *supra* at § 147; *see also* G.S. § 50-16.7, .7k (1976).

As Justice Higgins noted in *Joyner*, "Surely, however, some more adequate provision [than execution] should be made . . . during the legal battle . . . . Frequently it is months after an appeal is taken until the record is seen here." 256 N.C. at 592, 124 S.E. 2d at 727.

We agree with counsel for plaintiff that a more satisfactory answer should be found, but that answer can come only from the Legislature.

Defendant, however, should find little consolation in our decision to vacate the trial court order. We have vacated only that portion of the trial court order dealing with the *amount* of alimony. The parties' stipulation that plaintiff is *entitled* to alimony is in no way disturbed and remains in full force and effect for the hearing on remand. On remand, with new evidence to be presented and new findings to be made, defendant will be ordered to make alimony payments in the trial court's discretion. These amounts may be more or less or the same as those ordered at the first hearing. Most importantly, whatever the amount determined by the trial court, it may order the payments retroactive to the date of the first hearing on permanent alimony. Whatever payments defendant may have made since that date

will, of course, be to his credit. On the other hand, should defendant fail to make alimony payments while the case is on appeal and prior to the new hearing, he runs a serious risk of facing an order for substantial arrearages.

There is one final reason defendant's failure to pay during this interim period is at his own peril. Should defendant's failure to pay during this period cause plaintiff's economic situation to be seriously impaired, such an occurrence would undoubtedly affect the trial court's evaluation of one or more of the factors considered in determining alimony. For example, if plaintiff's "estate" is reduced during this period due to failure of defendant to provide support, the trial court would undoubtedly give this serious consideration in setting the amount of alimony.

## VI.

For the reasons stated above, the decision of the Court of Appeals is reversed. The order awarding plaintiff permanent alimony and attorney's fees is vacated. A new hearing shall be held in the trial court for determination of permanent alimony and counsel fees, if any, and the trial court shall make appropriate and sufficient findings of fact and conclusions of law to support its new determination. This cause is remanded to the Court of Appeals with instructions to remand to the District Court, Wake County, for further proceedings not inconsistent with this opinion.

Reversed and remanded.