JOHN WORKS, Plaintiff v. PAULA WORKS, Defendant

No. COA11-423

(Filed 6 December 2011)

## 1. Divorce—alimony—imputed income—no finding of bad faith

The trial court erred and an alimony award was remanded where the court reduced the alimony award based on imputed income without a finding that defendant had depressed her income in bad faith.

## 2. Divorce—alimony—child support obligation—imputed income—no finding of bad faith

The trial court erred and an alimony matter was remanded where the court reduced the wife's alimony award to account for her child support obligation after imputing income to her. There was no finding that the wife had depressed her income in bad faith.

## 3. Divorce—alimony—duration—findings required

The trial court erred by setting the duration of an alimony award as seven years without setting out its reasons. The matter was remanded for specific findings as to its reasons for the specified duration.

## 4. Divorce—alimony—husband's needs and expenses—evidence and finding—not in agreement

The trial court erred in an alimony action in its determination of the husband's monthly financial needs and expenses, and the matter was remanded, where the court's finding was derived from the husband's affidavit, but the affidavit and the finding did not correlate.

**5. Divorce—alimony—findings—defendant's ability as home-maker**

There was sufficient evidence in an alimony action to support a finding that the condition of the home called into question defendant's ability as a homemaker.

**6. Divorce—alimony—findings—husband's future work**

The evidence in an alimony action was sufficient to support a finding that the husband's work was not guaranteed in subsequent years.

Appeal by defendant from order entered 11 August 2010 by Judge Jacquelyn L. Lee in Lee County District Court. Heard in the Court of Appeals 14 November 2011.

*No brief, for plaintiff–appellee.*

*Doster, Post, Silverman & Foushee, P.A., by Jonathan Silverman, for defendant–appellant.*

MARTIN, Chief Judge.

Defendant Paula Works ("wife") appeals from the trial court's 11 August 2010 order awarding her $1,000.00 per month in alimony from plaintiff John Works ("husband") for a period of eighty-four consecutive months. We vacate the order and remand for further proceedings.

Husband and wife were married on 17 October 1991 and separated on 4 December 2008. Two children were born of the marriage; at the date of separation, the children were fourteen and twelve years old, respectively. Husband filed a complaint seeking both temporary and permanent custody of the minor children. Wife filed an Answer and Counterclaim seeking permanent custody of the minor children, post separation support, alimony, and an unequal equitable distribution of the marital assets in her favor. Wife's counterclaim alleged that husband engaged in acts of marital misconduct prior to the date of separation. In his reply to wife's counterclaim, husband admitted to "engag[ing] in illicit sexual behavior," but asked the court to deny the relief sought by wife.

On 11 August 2010, the trial court entered an order on wife's counterclaim for alimony, in which it determined that wife is a dependent spouse within the meaning of N.C.G.S. § 50 16.1A(2) and that husband is a supporting spouse within the meaning of N.C.G.S. § 50 16.1A(5).

After considering the factors set out in N.C.G.S. §50 16.3A(b) and making findings with respect to these factors, the trial court determined that wife is entitled to alimony. In calculating its award, the court imputed income to wife in the amount of $1,256.00 per month, and further reduced her monthly alimony award by $232.00 "for [wife's] share of support for the minor children," and by an additional $45.00 for wife's contribution toward the children's monthly private school expenses. The court then determined that wife is entitled to $1,000.00 per month in alimony for a period of eighty-four consecutive months. Wife appealed.

I.

[1] Wife first contends the trial court erred by reducing her monthly alimony award by $1,256.00 based on the court's finding that wife "has the ability to earn at least minimum wage." Wife argues that the court erroneously reduced her award based on this imputed income because it failed to first find that she depressed her income in bad faith. We agree.

"Alimony is ordinarily determined by a party's actual income, from all sources, at the time of the order. To base an alimony obligation on earning capacity rather than actual income, the trial court must first find that the party has depressed her income in bad faith." *Kowalick v. Kowalick*, 129 N.C. App. 781, 787, 501 S.E.2d 671, 675 (1998) (citing *Wachacha v. Wachacha*, 38 N.C. App. 504, 507–08, 248 S.E.2d 375, 377–78 (1978)); *see* 2 Suzanne Reynolds, *Lee's North Carolina Family Law* § 9.26, at 340 (5th ed. 1999) [hereinafter *Lee's Family Law*]. "In the context of alimony, bad faith means that the spouse is not living up to income potential in order to avoid or frustrate the support obligation." *Lee's Family Law* § 9.26, at 341. "Bad faith for the dependent spouse means shirking the duty of self-support . . . ." *Id.*; *see also id.* § 9.26, at 340 ("[T]he limitation on use of earning capacity applies to both dependent and supporting spouses."). The trial court might also find bad faith, "or the intent to avoid reasonable support obligations, from evidence that a spouse has refused to seek or to accept gainful employment; willfully refused to secure or take a job; deliberately not applied himself or herself to a business or employment; [or] intentionally depressed income to an artificial low." *Lee's Family Law* § 9.26, at 340–41; *see Bowes v. Bowes*, 287 N.C. 163, 171–72, 214 S.E.2d 40, 45 (1975).

Here, the trial court found that wife's work experience outside the home after the children were born was limited. The court found that wife did not work during the first four years of her younger child's life, and worked a series of minimum wage jobs intermittently in the years that followed. Wife also briefly pursued interests in real estate and hospital office clerical administration, but did not complete the training necessary to find success in these endeavors. Thus, the trial court found that wife "is unemployed, has no recurring income, and has been a homemaker who stayed home with the parties' two minor children while [husband] worked outside the home"; that wife "has failed to seek employment since August 2009"; and that wife "has also failed to obtain any additional training to help her in any employment search." However, the trial court did not find that wife "ha[d] depressed her income in bad faith." *See Kowalick*, 129 N.C. App. at 787, 501 S.E.2d at 675. Therefore, we conclude that the trial court's findings were not sufficient to support its imputation of a monthly income of $1,256.00 to wife. Accordingly, we remand this matter to the trial court with instructions that it determine whether wife depressed her income in bad faith, or, if not, to determine the amount of husband's monthly alimony obligation to wife without imputing the $1,256.00 monthly income to her.

II.

[2] Wife next contends the trial court erred by reducing her monthly alimony award by $232.00 to account for her child support obligation, which the court determined after applying the then effective[1] North Carolina Child Support Guidelines to wife's imputed monthly income of $1,256.00. Wife argues that the court erred by calculating her child support obligation based on imputed monthly income without first determining that she deliberately depressed her income in bad faith to avoid her obligation. Again, we agree.

As with a trial court's consideration of a claim for alimony, "[a] party's earning capacity may be used to calculate the [party's child support obligation] if he deliberately depressed his income or deliberately acted in disregard of his obligation to provide support." *Sharpe v. Nobles*, 127 N.C. App. 705, 708, 493 S.E.2d 288, 290 (1997). "However, before using the earnings capacity rule there must be a showing that the actions which reduced a party's income were not

---

1. At the time this order was entered on 11 August 2010, the North Carolina Child Support Guidelines that were applicable were those with the effective date of 1 October 2006.

taken in good faith." *Id.* Thus, where the trial court "finds that the decrease in a party's income is substantial and involuntary, without a showing of deliberate depression of income or other bad faith, the trial court is without power to impute income, and must determine the party's child support obligation based on the party's actual income." *Ellis v. Ellis*, 126 N.C. App. 362, 364–65, 485 S.E.2d 82, 83 (1997).

Here, just as the trial court failed to find that wife deliberately depressed her income with respect to her alimony obligation as a dependent spouse before it imputed income to her, the trial court also did not find that wife had depressed her income in bad faith in disregard of her obligation to support her minor children. Thus, the trial court erred in imputing a monthly income of $1,256.00 to wife before applying the North Carolina Child Support Guidelines. Therefore, we remand this matter to the trial court with instructions that it determine whether wife depressed her income in bad faith, or, if not, to determine the amount of wife's monthly child support obligation without imputing the $1,256.00 of monthly income to her. We further instruct the trial court to adjust the amount of any reduction in husband's alimony obligation to wife, if necessary, to accommodate any changes in the court's calculation of wife's child support obligation.

III.

**[3]** Wife next contends the trial court erred by setting the duration of the alimony award as eighty four consecutive months from 1 March 2010, without setting forth its reasons for the specified duration of the award. Again, we agree.

N.C.G.S. § 50 16.3A(b) provides, in relevant part, that the trial court "shall exercise its discretion in determining the amount, duration, and manner of payment of alimony," and that the "duration of the award may be for a specified or for an indefinite term," based on the court's consideration of sixteen relevant factors. N.C. Gen. Stat. § 50 16.3A(b) (2009). In making such determinations, the statute provides that the trial court "*shall set forth . . . the reasons* for its amount, duration, and manner of payment." N.C. Gen. Stat. § 50 16.3A(c) (emphasis added). In the present case, the trial court failed to set forth the reasons for its determination that wife is entitled to alimony only for a specified period of eighty-four consecutive months or seven years. Thus, in accordance with the statutory requirements of N.C.G.S. § 50 16.3A(c), we must remand this matter to the trial court with instructions that it make specific findings with respect to its reasons for the specified duration of its alimony award. *See, e.g.,*

*Friend–Novorska v. Novorska*, 131 N.C. App. 867, 870–71, 509 S.E.2d 460, 462 (1998) (holding that the trial court violated N.C.G.S. § 50 16.3A(c) by failing to set forth the reasoning to support the duration of a thirty month alimony award, and ordering the trial court to "make specific findings justifying that award, both as to amount and duration" on remand), *appeal after remand*, 143 N.C. App. 387, 545 S.E.2d 788 (2001).

IV.

**[4]** Wife next contends the trial court's finding that husband has reasonable financial needs and expenses totaling $6,652.02 per month is not supported by competent evidence. Again, we must agree.

It is well established that "[t]he amount of alimony is determined by the trial judge in the exercise of [her] sound discretion and is not reviewable on appeal in the absence of an abuse of discretion," *Quick v. Quick*, 305 N.C. 446, 453, 290 S.E.2d 653, 658 (1982), and that "[a] ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). Nevertheless, according to the trial court's own Findings of Fact 36 and 38, both husband's and wife's "needs and expenses as shown on his [and her] Financial Affidavit[s] . . . [were] incorporated herein by reference." Our review of the financial affidavit filed by husband prior to the hearing in February 2010 shows that husband's current living expenses were identified as $8,691.03, not $6,652.02, as indicated in the challenged Finding of Fact 23. Because the amount attributed to husband for his current living expenses in Finding of Fact 23 does not correlate with the amount listed in the affidavit from which the court indicated this amount was derived, we must remand this matter to the trial court with the instructions that it either (1) make findings to support its determination that husband's monthly reasonable financial needs and expenses totaled $6,652.02, or (2) correct any clerical error with respect to the amount of husband's monthly reasonable financial needs and expenses that may have occurred when reducing the order to writing.

V.

**[5]** Wife next contends there was insufficient evidence to support the trial court's Finding of Fact 34(1), which found:

[Wife] stayed home after the birth of the minor children and continued to stay home and not work a full-time job after the minor

children were both in school. [Wife's] ability to be a homemaker is in question as a result of the condition of the home. This is not a favorable factor for [wife].

Specifically, wife argues that, as a result of reviewing photographs of the parties' home taken immediately prior to the date of separation, the court erroneously attributed the unfavorable condition of the home to wife alone, even though both parties were residing in the home at this time. Nevertheless, wife does not challenge Finding of Fact 13, which found:

> [Wife] had been unable to keep the house clean and tidy since the parties lived in Massachusetts. She began hoarding items, accumulated a tremendous amount of clutter, and kept the former marital residence in total disarray. The kitchen countertops were covered with clutter, plants were left in the sink, and living areas were so filled with clutter that it was difficult to walk or sit. The children's beds, on occasion, did not have sheets on the mattresses and toys, clothes, and clutter were tossed throughout the rooms. [Husband] attempted to clean and straighten the house only to be met with extreme resistance from [wife].

After reviewing the record before us and the court's unchallenged findings of fact, *see Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal."), we conclude that there was sufficient evidence to support the trial court's Finding of Fact 34(I). Accordingly, we overrule this issue on appeal.

VI.

**[6]** Finally, wife contends there was insufficient evidence to support the portion of Finding of Fact 27 that found, "While [husband] has worked at Johnston Community College as an instructor for the past several years, this work is not guaranteed for him in 2010 or subsequent years." Our review of the record shows that husband's testimony supports this finding and there is no evidence in the record to contradict his testimony. However, wife appears to suggest, without the support of relevant legal authority, that the trial court abused its discretion because "[t]here was no testimony given that [husband] . . . would not have the same employment available to him in 2010 or subsequent years." Because we conclude that wife's unsupported assertion is meritless, we decline to address this issue further. Moreover, we

decline to consider the remaining assertions raised in wife's brief for which wife failed to present supporting legal authority. *See* N.C.R. App. P. 28(b)(6).

Vacated and remanded with instructions.

Judges ELMORE and STEPHENS concur.