An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-227

NORTH CAROLINA COURT OF APPEALS

Filed:  2 December 2014

DENISE S. UPCHURCH,
      Plaintiff

v.

CHARLES D. UPCHURCH,
      Defendant

Alamance County
No. 10 CVD 2185

Appeal by defendant from order entered 8 October 2013 by Judge James K. Roberson in Alamance County District Court. Heard in the Court of Appeals 13 August 2014.

*No brief filed on behalf of plaintiff-appellee.*

*The Vernon Law Firm, P.A., by Benjamin D. Overby and Wiley P. Wooten, for defendant-appellant.*

DAVIS, Judge.

Charles D. Upchurch ("Defendant") appeals from the trial court's 8 October 2013 alimony order.  On appeal, he contends that the trial court erred by (1) improperly considering Defendant's earning capacity for purposes of determining his alimony obligation; and (2) awarding alimony to Denise S. Upchurch ("Plaintiff").  Specifically, Defendant contends that

the trial court's conclusion that he suppressed his income in bad faith was unsupported by competent evidence. After careful review, we vacate and remand for further proceedings.

## Factual Background

Plaintiff and Defendant were married on 15 September 2002, separated on 1 June 2010, and subsequently divorced. No children were born from the parties' marriage.

On 29 July 2010, Plaintiff filed a complaint against Defendant seeking postseparation support, equitable distribution, and alimony. Defendant filed an answer and counterclaim, seeking equitable distribution and requesting that Plaintiff's spousal support claims be denied. On 10 January 2011, the trial court entered an order requiring Defendant to pay postseparation support to Plaintiff of $1,000.00 per month for 15 months beginning 1 August 2010.

Prior to and during the marriage, Defendant owned and operated a lawn care business, Upchurch Lawn Care. Defendant was employed by Upchurch Lawn Care, participated in the actual landscaping work, and received monthly income from the business throughout the course of the marriage. Defendant's son, Wesley Upchurch, was a regular employee of Upchurch Lawn Care for approximately 13 years. During the marriage, Plaintiff handled

bookkeeping for Upchurch Lawn Care but did not receive compensation for doing so. Upchurch Lawn Care paid for numerous personal expenses of the parties, including expenses related to dining out and vacations as well as personal household bills. During the marriage, Plaintiff was employed by Mobile Lift of Burlington, a construction equipment company, until she was laid off in August 2009. After being laid off, Plaintiff worked several waitressing jobs until she found part-time work with Dougherty Equipment Company on 3 May 2011. Since 1 November 2011, Plaintiff has worked full-time for Dougherty Equipment Company. In April 2012, Defendant sold Upchurch Lawn Care to his son for $130,000.00 and began receiving payments of $1,500.00 per month in May 2012. In June 2012, Defendant applied for and began receiving Social Security benefits.

On 7 September 2012, the trial court heard Plaintiff's claim for alimony.[1] On 8 October 2013, the trial court entered an order in which it concluded that Defendant "exercised bad faith in selling his lawn care business, stopping his employment in the lawn care business, and choosing to live off of his inheritance when considered in light of his potential obligation

---

[1] Prior to the hearing, the parties settled their equitable distribution claims in a consent judgment entered 7 September 2012.

to provide support for Plaintiff." The trial court also determined that (1) based on Defendant's earning capacity, he is a supporting spouse; (2) Plaintiff is a dependent spouse; and (3) awarding alimony to Plaintiff was equitable after considering all relevant factors. The trial court imputed an annual income of $75,000.00 to Defendant and concluded that Plaintiff was entitled to $1,000.00 per month in alimony from Defendant for a period of 21 months. Defendant gave timely notice of appeal to this Court.

**Analysis**

On appeal, Defendant argues that the trial court erred in concluding that he acted in bad faith by selling his business. Consequently, he contends that the trial court could not impute income to him under the earning capacity rule and, therefore, erred in concluding that he was the supporting spouse for purposes of alimony.

"The decision to award alimony is a matter within the trial court's sound discretion and is not reviewable on appeal absent a manifest abuse of discretion." *Megremis v. Megremis*, 179 N.C. App. 174, 181, 633 S.E.2d 117, 122 (2006) (citation, quotation marks, and brackets omitted). "An abuse of discretion has occurred if the decision is manifestly unsupported by reason or

one so arbitrary that it could not have been the result of a reasoned decision." *Kelly v. Kelly*, ___ N.C. App. ___, ___, 747 S.E.2d 268, 272-73 (2013) (citation and quotation marks omitted).

It is well settled that

> [e]ffective appellate review of an order entered by a trial court sitting without a jury is largely dependent upon the specificity by which the order's rationale is articulated. Evidence must support findings; findings must support conclusions; conclusions must support the judgment. Each step of the progression must be taken by the trial judge, in logical sequence; each link in the chain of reasoning must appear in the order itself. Where there is a gap, it cannot be determined on appeal whether the trial court correctly exercised its function to find the facts and apply the law thereto.

*Coble v. Coble*, 300 N.C. 708, 714, 268 S.E.2d 185, 190 (1980); *see also Spicer v. Spicer*, 168 N.C. App. 283, 287, 607 S.E.2d 678, 682 (2005) ("The trial court must . . . make sufficient findings of fact and conclusions of law to allow the reviewing court to determine whether a judgment, and the legal conclusions that underlie it, represent a correct application of the law.").

Alimony is ordinarily based upon a party's actual income at the time of the hearing. *Kowalick v. Kowalick*, 129 N.C. App. 781, 787, 501 S.E.2d 671, 675 (1998). However, the trial court may impute income based on the party's earning capacity if the

trial court determines that the party suppressed his income in bad faith. *Id.; see also Megremis*, 179 N.C. App. at 182, 663 S.E.2d at 123 ("It is well established that a trial court may consider a party's earning capacity only if the trial court finds the party acted in bad faith."). Bad faith within the context of alimony means "that the spouse is not living up to income potential *in order to avoid or frustrate the support obligation.*" *Works v. Works*, 217 N.C. App. 345, 347, 719 S.E.2d 218, 219 (2011) (citation and quotation marks omitted and emphasis added).

Bad faith may be found "from evidence that a spouse has refused to seek or to accept gainful employment; willfully refused to secure or take a job; deliberately not applied himself or herself to a business or employment; [or] intentionally depressed income to an artificial low." *Id.* (citation and quotation marks omitted). As such, when determining whether the imputation of income to a party is appropriate, "[t]he dispositive issue is whether a party is motivated by a desire to avoid his reasonable support obligations." *Wolf v. Wolf*, 151 N.C. App. 523, 527, 566 S.E.2d 516, 519 (2002).

Intent is a mental attitude which "must ordinarily be proven, if proven at all, by circumstantial evidence, that is, by proving facts from which the fact sought to be proven may be inferred." *Roberts v. McAllister*, 174 N.C. App. 369, 378, 621 S.E.2d 191, 198 (2005) (citation and quotation marks omitted), *appeal dismissed*, 360 N.C. 364, 629 S.E.2d 608 (2006). Thus, to support its conclusion that a party suppressed his income in bad faith, the trial court's findings must reflect facts and circumstances from which bad faith may be inferred. *See id.* (explaining that "[i]n order to base an award on earning capacity the finder of fact must have before it sufficient evidence of the proscribed intent" (citation and quotation marks omitted)).

Here, the trial court made the following relevant findings of fact regarding Defendant's income and earning capacity:

> 11. Defendant sold his lawn care business to his son, Wesley Upchurch, on or about April 2, 2012. The total purchase price was $130,000.00[,] which represented the Fair Market Value of any equipment plus the goodwill and other intangible property of the lawn care business.
>
> 12. On or about April 2, 2012, Wesley Upchurch signed a Promissory Note in favor of Defendant, Charles Upchurch, for $130,000.00, at zero percent interest, with payments of $1,500.00 per month beginning May 2012. The payout extends until June

2019.

13. Defendant indicated that his reason for selling his business to his son in May 2012 was because of his (Defendant's health). He indicated that he cannot "do it anymore." Particularly he stated that he "can't get out in 95 degree weather anymore." Plaintiff acknowledged in her testimony that Defendant went out to the sites of his customers and did the landscaping work. His son was generally a regular employee of the landscaping business, and that he would sometimes pick up a part-time employee from time to time if it were a particularly busy time. This testimony by Plaintiff corroborates that Defendant's involvement in the landscaping business was not in a less physically taxing position such as a supervisor, but he was in fact actively engaged in the landscaping work itself.

14. Defendant did not have the business appraised, but set the price based upon the advice of an accountant to average three years of receipts to determine the purchase price.

15. According to the property settlement of the parties, the lawn care business was allocated to Defendant as his separate property and was his to sell.

. . . .

18. Defendant applied for and began receiving Social Security Benefits in June, 2012 for May 2012. He receives a monthly benefit of $1,424.00 on or about the second Wednesday of each calendar month. Defendant obtained information from the Social Security Office that his benefit at age 66, if he retired at that age, would be $1,677.00, as compared to the $1,424.00 he

would receive as a monthly benefit at age 62.

. . . .

21. Defendant's mother passed away in February 2010. He inherited approximately $500,000.00 from his mother's estate as his separate property.

The trial court then concluded that

Defendant exercised bad faith in selling his lawn care business, stopping his employment in the lawn care business, and choosing to live off of his inheritance when considered in light of his potential obligation to provide support for Plaintiff. The court imputes an income to Defendant in the amount of at least $75,000.00 per year gross.

We recognize that a determination of bad faith resulting in the application of the earning capacity rule "is best made on a case by case analysis by the trial court." *Pataky v. Pataky*, 160 N.C. App. 289, 307, 585 S.E.2d 404, 416 (2003), *aff'd per curiam*, 359 N.C. 65, 602 S.E.2d 360 (2004). Here, however, the trial court's determination of bad faith is not adequately supported by its findings of fact. While the court concluded that Defendant's sale of his business was in bad faith "when considered in light of his potential obligation to provide support for Plaintiff," the trial court failed to make adequate findings to support that ultimate determination. Specifically, the trial court's findings fail to demonstrate that Defendant

sold his business, thereby reducing his income, "in order to avoid or frustrate [his] support obligation" to Plaintiff. *Works*, 217 N.C. App. at 347, 719 S.E.2d at 219 (citation and quotation marks omitted).

"[A] voluntary reduction in income is insufficient, without more, to support a finding of deliberate income depression or bad faith." *Pataky*, 160 N.C. App. at 307, 585 S.E.2d at 416. We therefore remand to the trial court so that it may make further findings of fact to support its conclusion that Defendant suppressed his income in bad faith. If the trial court ultimately determines that the evidence is insufficient to show bad faith, it must utilize Defendant's actual income when considering Plaintiff's alimony claim. *See Quick v. Quick*, 305 N.C. 446, 453, 290 S.E.2d 653, 658 (1982) ("Unless the supporting spouse is deliberately depressing his or her income . . . the ability of the supporting spouse to pay is . . . determined by his or her income at the time the award is made.").

## Conclusion

For the reasons stated above, we vacate the trial court's alimony order and remand for further proceedings consistent with this opinion.

VACATED AND REMANDED.

Judges HUNTER, Robert C., and DILLON concur.

Report per Rule 30(e).