CHEMICAL REALTY CORPORATION v. HOME FEDERAL SAVINGS AND LOAN ASSOCIATION OF HOLLYWOOD

No. 8228SC1265

(Filed 6 December 1983)

Appeal and Error § 57— breach of contract action—failure to make sufficient findings of fact

    In a civil action to recover damages for an alleged breach of contract, the trial court's findings failed to address crucial aspects of the rights and obligations of the parties arising upon the evidence and the case must be remanded for the trial court to make further findings which will enable the appellate court "to review the decision and test the correctness of the judgment." G.S. 1A-1, Rule 52(a)(1).

APPEAL by plaintiff from *Allen, Judge.* Judgment entered 29 June 1982 in BUNCOMBE County Superior Court. Heard in the Court of Appeals 24 October 1983.

Plaintiff sued defendant to recover damages for an alleged breach of contract. In its complaint, plaintiff claimed that defendant had agreed to a "takeout" or purchase of the plaintiff's construction loan to Landmark Hotel, Inc. (hereinafter, Landmark). Plaintiff alleged that it had made a construction loan to Landmark in reliance on defendant's promise to provide the long-term financing of the Landmark hotel. Defendant refused to make the long-term loan to Landmark after plaintiff had advanced funds under the construction loan.

Plaintiff alleged that defendant had a contractual duty to fund the long-term loan for two reasons. First, defendant had issued a permanent loan commitment to Landmark in which defendant promised, under certain terms, to provide long-term financing for Landmark's hotel. Plaintiff alleged that it was a third party beneficiary of defendant's permanent loan commitment to Landmark. Second, defendant sent a letter to plaintiff agreeing to purchase the construction loan note and accept an assignment of the deed of trust held by plaintiff as long as there had been no default of the terms of the permanent loan commitment. Plaintiff alleged that this letter created a direct contractual duty running from defendant to plaintiff. Plaintiff's amended complaint asked for $5,694,951.56 in damages.

In its answer, defendant denied that plaintiff was a third party beneficiary of the permanent loan commitment and denied that its letter to plaintiff formed a contract. Defendant also alleged that it had no obligation under the permanent loan commitment since the terms of the commitment had not been fulfilled.

The stipulations and evidence at trial tended to show the following. Landmark's predecessor-in-interest had acquired some land in Asheville on which it planned to build a hotel. It entered into negotiations with defendant for a long-term mortgage loan to finance the hotel. On 14 April 1972 defendant issued a permanent loan commitment letter which Landmark's predecessor-in-interest executed and returned along with a $60,000.00 commitment fee. The commitment letter was later modified to substitute Landmark as the borrower, and in other minor aspects.

The commitment letter included the following pertinent terms. Defendant committed itself to loan $6,000,000.00 for the proposed hotel, as described in a feasibility report, to be disbursed upon completion of the hotel. The loan was conditioned on receipt of an appraisal of not less than $8,000,000.00 for the real estate to be encumbered. The loan was "subject to an acceptable management contract to be executed by the borrower and the Hyatt House Hotel Corp." It was also subject to defendant being placed in the position of a mortgagee holding a valid first lien, with title insurance to be provided by a company acceptable to defendant. Payment of the $60,000.00 commitment fee by 15 May 1972 kept the commitment in effect for one year from the date of the 14 April 1972 commitment letter. Six-month extensions of the commitment could be obtained by payment of an additional $30,000.00 fee for each extension; however, any extension fee had to be paid fifteen days prior to the expiration of the outstanding commitment. The commitment was to automatically terminate upon, among other things, the failure of defendant "to receive written certification from all applicable Government Authorities indicating that the completed project has been approved by them . . . ."

Landmark's proposed contract with Hyatt House Hotel Corp. was rejected by defendant because Hyatt wanted defendant to subordinate its interests as first mortgagee to Hyatt. Landmark then proposed Motor Inn Management, Inc. (hereinafter, MIM) and on 13 November 1972 defendant agreed to accept MIM as the management company instead of Hyatt.

Also in November, 1972, a broker approached plaintiff about becoming the construction lender for the Landmark project. Plaintiff reviewed the permanent loan commitment of defendant and issued a construction loan commitment to Landmark on the condition that Landmark, plaintiff, and defendant would enter into a tripartite buy-sell agreement whereby plaintiff's construction loan would be repaid from defendant's permanent loan. Not until after the construction loan commitment had been issued in December of 1972 did plaintiff enter into negotiations with defendant for this proposed takeout agreement. Defendant refused to enter the tripartite agreement proposed by plaintiff. Defendant felt that the proposed agreement would have forced it to take out the construction loan "come hell or high water." Plaintiff modified its

construction loan commitment on 7 February 1973 to eliminate the requirement of a tripartite agreement.

Plaintiff and defendant continued to discuss the arrangements by which defendant would become Landmark's permanent lender. Plaintiff and an intermediary broker worked out terms that were acceptable to defendant. These terms were set forth in an undated letter executed by defendant and delivered to the intermediary in early April, 1973. The intermediary passed the undated letter on to plaintiff. The letter stated in part that,

> This is to confirm that the Commitment and amendments, copies of which are attached hereto, is in full force and effect as of the date hereof, that there have been no modifications thereof and that no modifications shall be made without your consent and pursuant to such commitment. This is to confirm that:
>
> 1. We have received, in full satisfaction of the terms of paragraph numbered 1 of the Commitment, and MAI appraisal indicating a value in the Premises, upon completion of the improvements of at least $8,000,000;
>
> 2. We have reviewed the Chicago Title Insurance Company commitment for Title Insurance No. 73-U-00006 attached hereto as marked up with deletions crossed through and additions noted thereon; Chicago Title Insurance Company is acceptable to us as the title insurer and policy to be issued to us pursuant to paragraph 5 of our commitment . . . will be satisfactory and acceptable by us.
>
> . . .
>
> 4. We have found acceptable and approved the Management Contract dated December 26, 1972 between Asheville Development Associates and Motor Inn Management, Inc. as assigned to the Borrower satisfying the terms of paragraph numbered 4 of the Commitment;
>
> 5. We have received the $60,000 commitment fee referred to in paragraph numbered 8 on the Commitment and agree that we will accept from you the additional $90,000 commitment fee at the closing of the construction loan whereupon the Commitment will be automatically extended to October 14, 1974;

6. The issuance of (a) the Certificate of Completion referred to in Section 307 of the Contract for Sale of Land For Private Redevelopment by and between Overland Investments, Ltd. and Housing Authority of The City of Asheville and (b) a Certificate of Occupancy, will satisfy the conditions of paragraph numbered 9 (a) of the Commitment;

. . .

10. We have approved, in all respects the First Mortgage Real Estate Note and Deed of Trust, copies of which are attached hereto, and agree that at the appropriate time, as provided in the Commitment, we will purchase said First Real Estate Note from you, without recourse, and accept the assignment of said Deed of Trust provided however that the loan is not in default under the terms of our Commitment or our loan documents. We have also approved the form of the assignment of the Deed of Trust to be made by you to us, a copy of which is attached hereto.

11. We have reviewed the Construction Note and Construction Deed of Trust attached hereto including the language incorporating therein the First Mortgage Real Estate Note and Deed of Trust referred to in 10 above. We understand that the Guaranty and Endorsement on the Construction Note will be executed at the closing of your construction loan with Landmark Hotel, Inc. and will survive an assignment of your note to us. We understand that the terms and provisions of the First Mortgage Real Estate Note and Deed of Trust referred to in 10 above will automatically become operative upon an assignment of the Deed of Trust and Note to us from you.

Defendant extended its original commitment to 15 April 1973 "for purposes of facilitating the closing of the construction loan." Plaintiff closed the construction loan to Landmark on 13 April 1973. No representative of defendant was present at the construction loan closing. Plaintiff disbursed $30,000.00 directly to defendant the same day to obtain a six-month extension of the permanent loan commitment. It disbursed another $60,000.00 a few days later to extend the permanent loan commitment through 14 October 1974.

At the closing, Landmark executed a building loan mortgage note in the principal amount of $6,000,000.00 and delivered it to plaintiff. Attached to the building loan mortgage note as Exhibit A was a first mortgage real estate note in the principal amount of $6,000,000.00, also executed by Landmark and delivered to plaintiff. The building loan mortgage note provided that if it was purchased by defendants, its terms would be superseded by those of the first mortgage real estate note.

The building loan mortgage note was secured by a construction loan deed of trust executed by Landmark on the same day. Plaintiff was the beneficiary and Sydnor Thompson served as trustee. Attached to the construction loan deed of trust as Exhibit B was a permanent loan deed of trust executed by Landmark. The trustee was Thomas Wharton, who represented the broker acting as an intermediary between plaintiff and defendant. The construction loan deed of trust provided that upon the purchase of the building loan mortgage note and the assignment of the construction loan deed of trust to defendant, the terms of the permanent loan deed of trust would supersede those of the construction loan deed of trust. The construction loan deed of trust, with the permanent loan deed of trust attached as Exhibit B, was recorded in the Buncombe County Office of the Register of Deeds.

Plaintiff advanced $4,867,249.43 to Landmark from 13 April 1973 to 10 October 1974 under the construction loan. Landmark used the funds to build the hotel and prepare it for doing business. The construction was certified as substantially complete on 10 October 1974.

During construction of the hotel, several events occurred pertinent to the permanent loan commitment. The management contract with MIM appeared to be at an impasse, and MIM and Landmark sued each other for breach of that contract. Landmark ordered MIM to cease performance of its pre-opening duties in March, 1974. MIM notified all concerned parties in July of 1974 that it deemed its obligations to plaintiff and defendant terminated due to Landmark's breach of the management contract. Defendant informed plaintiff that it was worried about the collapse of the management contract and about a lease agreement between Landmark and Orbital Industries, Inc. Neither Landmark nor plaintiff proposed a substitute management company accept-

able to defendant. The Housing Authority of Asheville refused to issue a certificate of completion, which had been requested, for the hotel in October, 1974.

Landmark was unable to pay all the bills for the hotel on 9 October 1974, and on that day, a representative of Landmark tendered the hotel keys to a representative of plaintiff, who refused to accept them. On 10 October 1974 Landmark closed the hotel due to a lack of operating funds.

Meanwhile, plaintiff informed the intermediary broker, by a letter dated 3 October 1974, that it and Landmark were ready to close the permanent loan with defendant. Plaintiff sent a telegram and a letter, both dated 7 October 1974, to defendant stating that it would tender the first real estate note and deed of trust on 11 October 1974 to defendant. On 11 October 1974 plaintiff sent defendant a telegram giving notice that plaintiff would tender the Landmark loan on 14 October 1974.

On 14 October 1974 representatives of plaintiff arrived at defendant's hometown office prepared to close the permanent loan to Landmark. Defendant refused plaintiff's tender of the construction loan note and deed of trust. Defendant indicated that the terms of the permanent loan commitment had not been met and that the economy was too uncertain for it to finance as risky a venture as the hotel. Plaintiff then asked for an extension of the permanent loan commitment. Defendant refused this request.

Landmark filed a voluntary petition in bankruptcy on 18 November 1974. On 11 February 1976 plaintiff received permission to foreclose its deed of trust. Plaintiff held a public foreclosure sale three months later and was the successful bidder at $3,000,000.00. Plaintiff subsequently sold the property to its wholly-owned subsidiary, which in turn sold the hotel to Vector Hospitality Associates.

This action was filed on 20 December 1976 by plaintiff. The trial court denied defendant's motion to dismiss for lack of jurisdiction. The trial court's order was upheld on appeal.

The case was then tried before the trial court sitting without a jury. After making findings of fact and conclusions of law, the trial court entered judgment for the defendant. Plaintiff appealed.

*Grier, Parker, Poe, Thompson, Bernstein, Gage & Preston, by Sydnor Thompson, Fred T. Lowrance, and Sally Nan Barber; Herbert Hyde; Van Winkle, Buck, Wall, Starnes & Davis, by Larry McDevitt, for plaintiff.*

*McCoy, Weaver, Wiggins, Cleveland & Raper, by John E. Raper, Jr., and Richard M. Wiggins, and Redmond, Stevens, Loftin & Currie, by John S. Stevens and Thomas R. West, for defendant.*

WELLS, Judge.

Plaintiff first contends that the trial court erred in failing to find and conclude that a contract existed between plaintiff and defendant. Plaintiff also contends that the trial court should have found and concluded that it was a third party beneficiary of defendant's permanent loan commitment. We hold that the trial court did not adequately address these issues.[1]

G.S. § 1A-1, Rule 52(a)(1) of the Rules of Civil Procedure requires a trial judge hearing a case without a jury to make findings of fact and conclusions of law. To comport with Rule 52(a)(1), the trial court must make "a specific statement of the facts on which the rights of the parties are to be determined, and those findings must be sufficiently specific to enable an appellate court to review the decision and test the correctness of the judgment." *Quick v. Quick,* 305 N.C. 446, 290 S.E. 2d 653 (1982) (citation omitted). Rule 52(a)(1) does not require recitation of evidentiary facts, but it does require specific findings on the ultimate facts established by the evidence, admissions and stipulations which are determinative of the questions involved in the action and essential to support the conclusions of law reached. *Id. See also Farmers Bank v. Michael T. Brown Distributors, Inc.,* 307 N.C. 342, 298 S.E. 2d 357 (1983).

---

1. In *Chemical Realty Corp. v. Home Federal Savings & Loan Association of Hollywood,* 40 N.C. App. 675, 253 S.E. 2d 621, *disc. rev. denied and app. dismissed,* 297 N.C. 612, 257 S.E. 2d 435 (1979), *app. dismissed,* 444 U.S. 1061, 100 S.Ct. 1000, 62 L.Ed. 2d 744 (1980), we upheld the trial court findings that a contract existed between Home Federal and Landmark. These findings were made solely to establish jurisdiction over the defendant, do not go to the merits of this case or determine the contractual rights of plaintiff and defendant, and therefore do not constitute the law of the case on the respective contractual rights or obligations of plaintiff and defendant.

Although the letter written by Home Federal to Chemical appears from an agreement supported by consideration by Home Federal to purchase Chemical's construction loan upon compliance with certain conditions precedent, the trial court's only finding of fact with respect to the letter was that "Home Federal, by Wohl, executed an undated letter being Defendant's Exhibit 154 for identification purposes." This finding is an evidentiary fact, not an ultimate fact. The trial court failed to make any finding of fact regarding whether defendant owed any contractual duty to plaintiff. Such findings are necessary to a valid judgment in this action. As the North Carolina Supreme Court has stated,

> Effective appellate review of an order entered by a trial court sitting without a jury is largely dependent upon the specificity by which the order's rationale is articulated. Evidence must support findings; findings must support conclusions; conclusions must support the judgment. Each step of the progression must be taken by the trial judge, in logical sequence; each link in the chain of reasoning must appear in the order itself. Where there is a gap, it cannot be determined on appeal whether the trial court correctly exercised its function to find the facts and apply the law thereto.

*Coble v. Coble,* 300 N.C. 708, 268 S.E. 2d 185 (1980).

Although the trial court's order contains more than forty-one separate findings of fact,[2] the evidence, stipulations, and pleadings in the instant case present questions of fact which were ignored in those findings, but which must be resolved before judgment can be entered. On remand, the following issues should be resolved by proper findings and conclusions.

(1) Was there a promise by defendant, supported by consideration, to plaintiff to purchase plaintiff's construction loan?

(2) If defendant made no promise, did defendant's actions provide the basis for plaintiff to become a creditor beneficiary of defendant's permanent loan commitment?

---

2. We note that some of the trial court's purported conclusions of law are only additional findings of fact.

(3) If plaintiff contracted with defendant, or had third party beneficiary status, what were the conditions precedent and material terms that had to be complied with before defendant's duty to plaintiff to perform arose?

(4) Were those terms and conditions substantially complied with?

(5) If Landmark and/or plaintiff had not fulfilled the conditions precedent and material terms on 14 October 1974, did plaintiff timely request defendant to extend the permanent loan commitment beyond 14 October 1974?

(6) If plaintiff did make a timely request to extend the permanent loan commitment, to what extent did plaintiff incur foreseeable and ascertainable damages by defendant's refusal to extend?

Defendant contends that even if the trial court failed to make all the necessary findings arising under the evidence, the findings it made adverse to plaintiff and supported by the evidence are sufficient to sustain the trial court's conclusions and judgment. We cannot agree. The trial court's findings having failed to address crucial aspects of the rights and obligations of the parties arising upon the evidence, we can make no assumptions as to what the result will be when the evidence in the case is properly sifted, addressed, and treated at the trial level.

The parties to this appeal have submitted extensive briefs; plaintiff has brought forward a number of exceptions we have not addressed; but we perceive that it would be untimely and unproductive for us to deal with plaintiff's other exceptions because of the obvious need for the heart of this case to be reconsidered at the trial level.

Because we perceive there are no questions raised in the appeal as to admission of evidence or credibility of witnesses, we conclude that it is unnecessary to order a new trial, and that the case may be properly considered on remand on the existing record.

For the reasons stated, the judgment of the trial court must be reversed and the case remanded for further proceedings consistent with this opinion.

Reversed and remanded.

Chief Judge VAUGHN and Judge JOHNSON concur.