ELMORE, Judge.
 

 *824
 
 This cases arises from an order of bond forfeiture issued after defendant failed to appear in court. The trial court denied surety's petition to remit and subsequent Rule 59(e) motion on the grounds that surety failed to demonstrate "extraordinary circumstances" which warrant relief from judgment. On appeal, surety principally argues that (1) in its order denying surety's motion to remit, the trial court failed to make sufficient findings of fact determinative of the ultimate issue, and (2) the trial court abused its discretion in denying surety's Rule 59(e) motion. We affirm.
 

 I. Background
 

 Joel Juan Navarro (defendant) was arrested in Harnett County for cocaine trafficking. He was released after posting a $100,000.00 bond written by Jessica Matthews, a bail agent for Crum & Forster Indemnity Co. (surety). Defendant was scheduled to appear in Harnett County District Court on 27 May 2014, but failed to do so. The next day, the court issued an order of forfeiture on the $100,000.00 bond. The forfeiture notice listed 25 October 2014 as the final judgment date.
 

 On 2 October 2014, surety contacted David Marshburn, one of its bail agents, for assistance in finding defendant. Marshburn, along with Agents Berube and Ward, drove from North Carolina to Miami and located defendant's home. After conducting surveillance, the agents entered the house. They observed no sign of defendant but his girlfriend, Miriam Roche, and friend, Maria Romero, were present. Both told the agents that defendant was in Boston and had not
 
 *60
 
 been back since he was released from jail. Marshburn told Roche to "call Defendant's Attorney in Harnett County North Carolina and have the order for arrest and failure to appear recalled and make sure Defendant goes to court." He also told Romero to contact him when defendant's case was recalled. The agents then left and returned to North Carolina.
 
 *825
 
 On 16 October 2014, Marshburn learned from defendant's attorney that the district attorney was not willing to recall the order for arrest and failure to appear. Nevertheless, the next day Marshburn traveled back to Miami in hopes that defendant "would come back out of hiding since defendant thinks he does not have a warrant." At defendant's home, Romero told Marshburn that defendant is in Boston and that he was stopped a few days ago at the airport by TSA. Marshburn decided to head to Boston.
 

 Upon his arrival, Marshburn began conducting surveillance at the address listed on the appearance bond. A neighbor told Marshburn that he saw defendant at the address several weeks ago, at which point Marshburn decided to approach the house. A woman answered the door and told Marshburn that defendant had been in Miami with Roche about two weeks ago, but he was not at the house in Boston. She also told Marshburn that if he "wanted to find defendant, he was going to have to follow [Roche]."
 

 Marshburn arrived back in North Carolina on 22 October 2014 before making his way to Miami with Agents Berube and Ward. At defendant's home, the agents again questioned Roche and Romero, who told them that defendant was now in Phoenix staying with a friend. The agents decided to return to North Carolina and verify defendant's travel with TSA.
 

 On 25 October 2014, Marshburn flew to Phoenix and found the apartment complex where defendant was allegedly staying. After a day of surveillance, Marshburn decided to question the maintenance man. He directed Marshburn to defendant's apartment unit, but added that he had "not seen defendant in a while." Hoping for an update on defendant's location, Marshburn texted Romero, who told him that defendant "went across the border into Mexico." Marshburn returned to North Carolina.
 

 On 31 October 2014, Marshburn and Berube flew to Miami after hearing that defendant "might show up" at a Halloween party hosted by Roche. They did not find defendant, but they did install a tracking device on his car before returning to North Carolina. A week later, Marshburn received information from the tracking device showing that defendant's car had moved to an unfamiliar address. Marshburn traveled back to Miami with Agents Berube and Griggs to conduct surveillance and tail cars leaving the house. On 14 November 2014, after no sign of defendant, the agents once again returned to North Carolina.
 

 The trail went cold until 7 December 2014, when Marshburn received a text message containing defendant's new phone number. He
 
 *826
 
 purchased a phone with a Phoenix area code and had Agent Jiminez call defendant to "befriend" him. Six days later, Marshburn and Jiminez flew to Phoenix to set up a meeting with defendant but, according to Marshburn, defendant "gave Agent Jiminez the run around and never would meet." Eventually, defendant disconnected the phone and the agents' subsequent attempts to track it failed. They returned to North Carolina.
 

 On 27 December 2014, Marshburn made his final visit to Miami with Agent Trotter. Marshburn had received another text message containing defendant's location and intercepted defendant as he was heading toward his home in Miami. On 30 December 2014, the agents surrendered defendant into custody in Harnett County on behalf of surety.
 

 Following defendant's surrender, Marshburn submitted a petition seeking full remission of the $100,000.00 bond. The court denied the petition by a written order entered 23 January 2015, which contained the following relevant findings of fact:
 

 5. The Harnett County Clerk of Court issued a Bond Forfeiture Notice giving notice of the Defendant's failure to appear to the Defendant, Surety, and Bail Agent on 28 May 2014.
 

 *61
 
 6. The Bond Forfeiture Notice indicated 25 October 2014 was the Final Judgment Date.
 

 7. The Surety surrendered the Defendant on 30 December 2014 to the Harnett County Detention Center.
 

 8. On 6 January 2015, the Surety filed a Petition for Remission with the Harnett County Clerk of Court requesting the Court remit the 100,000.00 dollar bond which was paid by the Surety on 27 October 2015.
 

 ....
 

 10. The Surety and the Bail Agent are engaged in the bail bonding profession.
 

 11. The Surety and the Bail Agent received proper notice of the pending bond forfeiture and the final judgment date.
 

 12. The Surety and Bail Agent were aware the Defendant owned property in Massachusetts and Florida prior to posting the Defendant's bond.
 

 *827
 
 13. The Surety and Bail Agent were aware the Defendant did not reside in the State of North Carolina.
 

 14. The Defendant was apprehended by the Surety in the State of Florida where he owned a home.
 

 15. Prior to posting the Defendant's bond, the surety secured a 100,000.00 dollar lien against the Defendant's home located in Florida.
 

 Based on these findings, the trial court concluded surety and bail agent failed to demonstrate that any extraordinary cause exists to warrant relief from the final judgment of the Court.
 
 [1]
 

 On 2 February 2015, surety filed a motion to alter or amend the judgment pursuant to Rule 59. Along with the motion, surety included exhibits and affidavits from Marshburn describing his efforts to apprehend and surrender defendant. After a hearing, the trial court took the matter under advisement and later denied surety's motion by an order entered 10 June 2015. On 23 June 2015, surety appealed both the 10 June 2015 order denying the motion to alter or amend the judgment, and the 23 January 2015 order denying surety's petition to remit.
 

 II. Discussion
 

 A. Jurisdiction
 

 As a threshold matter, the Board argues that this Court lacks jurisdiction over surety's appeal from the trial court's 23 January 2015 order. The Board maintains that surety's motion to alter or amend the judgment was not a proper Rule 59 motion because (1) it failed to state the grounds with particularity, as required by Rule 7, and (2) it attempts only to reargue matters from the original hearing and present evidence that could have been offered but was not. According to the Board, therefore, surety's motion was insufficient to toll the time for appeal of the underlying order.
 

 "[A] bond forfeiture proceeding, while ancillary to the underlying criminal proceeding, is a civil matter."
 
 State ex rel. Moore Cnty. Bd. of Educ. v. Pelletier,
 

 168 N.C.App. 218
 
 , 222,
 
 606 S.E.2d 907
 
 , 909 (2005)
 

 *828
 
 (citing
 
 State v. Mathis,
 

 349 N.C. 503
 
 ,
 
 509 S.E.2d 155
 
 (1998) ). Pursuant to Rule 3 of the North Carolina Rules of Appellate Procedure, a party has thirty days to appeal from a judgment or order in a civil action. N.C. R.App. P. 3(c) (2016). " 'The running of the time for filing and serving a notice of appeal in a civil action ... is tolled ... by a timely [ Rule 59 ] motion' for a new trial or to alter or amend a judgment."
 
 Smith v. Johnson,
 

 125 N.C.App. 603
 
 , 606,
 
 481 S.E.2d 415
 
 , 417 (1997) (quoting N.C. R.App. P. 3(c), (c)(3), (c)(4) ).
 

 Rule 59 of the North Carolina Rules of Civil Procedure lists nine grounds upon which a party may move to alter or amend a judgment. N.C. Gen.Stat. § 1A-1, Rule 59(a) & (e) (2015). Such grounds include "[i]nsufficiency of the evidence to justify the verdict or that the verdict is contrary to law," and "[a]ny other reason heretofore recognized as grounds for new trial." N.C. Gen.Stat. § 1A-1, Rule 59(a)(7) & (9). Like any other written motion, a Rule 59 motion is
 
 *62
 
 subject to the requirements of Rule 7. N.C. Gen.Stat. § 1A-1, Rule 7(b)(1) (2015) ;
 
 see, e.g.,
 

 N.C. Alliance for Transp. Reform, Inc. v. N.C. Dep't of Transp.,
 

 183 N.C.App. 466
 
 , 468-70,
 
 645 S.E.2d 105
 
 , 107-08 (2007) (finding a Rule 59 motion procedurally deficient under Rule 7(b)(1) ).
 

 Rule 7(b)(1) states, "An application to the court for an order shall be by motion which ... shall be made in writing,
 
 shall state with particularity the grounds therefor,
 
 and shall set forth the relief or order sought." N.C. Gen.Stat. § 1A-1, Rule 7(b)(1) (2015) (emphasis added). "The mere recitation of the rule number relied upon by the movant is not a statement of the grounds within the meaning of Rule 7(b)(1)."
 
 Smith,
 

 125 N.C.App. at 606
 
 ,
 
 481 S.E.2d at 417
 
 . Rather, the movant "must supply information revealing the basis of the motion."
 

 Id.
 

 (citing
 
 Sherman v. Myers,
 

 29 N.C.App. 29
 
 , 30,
 
 222 S.E.2d 749
 
 , 750 (1976) ; 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
 
 Federal Practice and Procedure: Civil
 
 § 2811 (2d ed.1995)). If necessary, a Rule 59 motion may be supported by accompanying affidavits.
 
 See
 
 N.C. Gen.Stat. § 1A-1, Rule 59(c) (2015) ("When a motion for new trial is based upon affidavits they shall be served with the motion.").
 

 After examining the contents of the challenged motion and attached affidavits, we are convinced that surety's motion satisfied the particularity requirements expressed in Rule 7. In its motion, surety offered the following grounds for relief: "[P]etitioner asserts that there was an insufficiency of the evidence before the Court to justify the verdict or judgment and the conclusions of law as well as other reasons heretofore recognized as grounds to alter or amend judgment." While the foregoing statement tracks the language from Rule 59(a)(7) and (9), surety
 
 *829
 
 elaborates on the basis of its motion: " Movant prays the Court open this judgment previously entered, take additional testimony on the issue of extraordinary cause and upon such evidence to amend the findings of fact and conclusions of law will make [sic] new findings and conclusions and direct the entry of an amended and new judgment."
 

 Surety also attached and incorporated by reference Marshburn's affidavit, which included a brief description of his efforts to surrender defendant and his assertion that "[s]uch efforts constitute extraordinary cause to justify relief from judgment under North Carolina law." Marshburn's second affidavit, attached and incorporated into his first, as well as the exhibits documenting Marshburn's travel, receipts, text messages, and other information, provides a detailed account of his efforts to locate and surrender defendant. The affidavits and exhibits offer evidentiary support for surety's argument that the verdict was based on insufficient evidence-which is not the same as "re-arguing matters from the original hearing." We conclude, therefore, that surety filed a proper Rule 59 motion to toll the thirty-day period for appeal.
 

 B. Challenged Finding of Fact No. 15
 

 Turning now to the merits of the appeal, surety first argues that the trial court's Finding of Fact No. 15 is not supported by competent evidence. Surety does not challenge the court's finding that defendant owned a home in Florida, as stated in Finding of Fact No. 14, but instead argues that the home securing the bond belonged to a person other than defendant.
 

 "In reviewing a trial judge's findings of fact, we are 'strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law.' "
 
 State v. Williams,
 

 362 N.C. 628
 
 , 632,
 
 669 S.E.2d 290
 
 , 294 (2008) (quoting
 
 State v. Cooke,
 

 306 N.C. 132
 
 , 134,
 
 291 S.E.2d 618
 
 , 619 (1982) );
 
 see also
 

 Sisk v. Transylvania Cmty. Hosp., Inc.,
 

 364 N.C. 172
 
 , 179,
 
 695 S.E.2d 429
 
 , 434 (2010) (" '[F]indings of fact made by the trial judge are conclusive on appeal if supported by competent evidence, even if ... there is evidence to the contrary.' " (quoting
 
 Tillman v. Commercial Credit Loans, Inc.,
 

 362 N.C. 93
 
 , 100-01,
 
 655 S.E.2d 362
 
 , 369 (2008) )).
 

 After careful review of the record, we have found no evidence that surety secured a
 
 *63
 
 $100,000.00 lien against defendant's home in Florida. The record actually shows that the bond was secured by the home of Alexander Garcia, who executed a mortgage deed and contingent
 
 *830
 
 promissory note securing $100,000.00 in future advances to surety in the event of forfeiture. The address of the encumbered property described in the mortgage deed does not match defendant's address listed in Marshburn's affidavit. There is no evidence that defendant owned or had any interest in the encumbered property. Nor can we even determine the nature of Garcia's relationship to defendant. Because Finding of Fact No. 15 is not supported by competent evidence, it may not be used to support the conclusion of law that surety failed to demonstrate "extraordinary circumstances."
 
 See
 

 Cavenaugh v. Cavenaugh,
 

 317 N.C. 652
 
 , 658,
 
 347 S.E.2d 19
 
 , 23 (1986) ("Since the trial judge's findings of fact are not supported by competent evidence, they cannot be used to support a conclusion of law....").
 

 C. Sufficiency of the Trial Court's Findings of Fact
 

 Next, surety argues that the trial court erred in denying surety's motion to remit the bond forfeiture because it failed to make pertinent findings of fact on contested matters, as required by N.C. Gen.Stat. § 1A-1, Rule 52.
 

 "In all actions tried upon the facts without a jury," Rule 52 of the North Carolina Rules of Civil Procedure requires the trial court to "find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." N.C. Gen.Stat. § 1A-1, Rule 52(a)(1) (2015). To satisfy Rule 52,
 

 the trial court must make "a specific statement of the facts on which the rights of the parties are to be determined, and those findings must be sufficiently specific to enable an appellate court to review the decision and test the correctness of the judgment." Rule 52(a)(1) does not require recitation of evidentiary facts, but it does require specific findings on the ultimate facts established by the evidence, admissions and stipulations which are determinative of the questions involved in the action and essential to support the conclusions of law reached.
 

 Chem. Realty Corp. v. Home Fed. Sav. & Loan Ass'n,
 

 65 N.C.App. 242
 
 , 249,
 
 310 S.E.2d 33
 
 , 37 (1983) (citations and quotation marks omitted),
 
 disc. review denied,
 

 310 N.C. 624
 
 ,
 
 315 S.E.2d 689
 
 ,
 
 cert. denied,
 

 469 U.S. 835
 
 ,
 
 105 S.Ct. 128
 
 ,
 
 83 L.Ed.2d 69
 
 (1984) ;
 
 see also
 

 State v. Rakina,
 

 49 N.C.App. 537
 
 , 540-41,
 
 272 S.E.2d 3
 
 , 5 (1980) ("Under Rule 52(a), ... the court need only make brief, definite, pertinent findings and conclusions upon the contested matters."). "Where a trial court's findings of fact ignore questions of fact that must be resolved before judgment can be entered, the
 
 *831
 
 action should be remanded."
 
 State v. Escobar,
 

 187 N.C.App. 267
 
 , 270,
 
 652 S.E.2d 694
 
 , 697 (2007) (citing
 
 Chem. Realty Corp.,
 

 65 N.C.App. at 250
 
 ,
 
 310 S.E.2d at
 
 37 ).
 

 There are only two grounds upon which a surety may obtain relief from a final judgment of forfeiture: "The person seeking relief was not given notice as provided in G.S. 15A-544.4"; or "[o]ther extraordinary circumstances exist that the court, in its discretion, determines should entitle that person to relief." N.C. Gen.Stat. § 15A-544.8(b)(1) & (2) (2015). " 'Extraordinary circumstances' in the context of bond forfeiture has been defined as 'going beyond what is usual, regular, common, or customary ... of, relating to, or having the nature of an occurrence or risk of a kind other than what ordinary experience or prudence would foresee.' "
 
 State v. Gonzalez-Fernandez,
 

 170 N.C.App. 45
 
 , 49,
 
 612 S.E.2d 148
 
 , 152 (2005) (quoting
 
 State v. Vikre,
 

 86 N.C.App. 196
 
 , 198,
 
 356 S.E.2d 802
 
 , 804 (1987) ).
 

 Whether extraordinary circumstances exist "is a heavily fact-based inquiry" and "should be reviewed on a case by case basis."
 
 State v. Coronel,
 

 145 N.C.App. 237
 
 , 244,
 
 550 S.E.2d 561
 
 , 566 (2001). Our courts have articulated several factors to determine whether "extraordinary circumstances" exist to remit a judgment of forfeiture. Those relevant to our discussion
 
 sub judice
 
 include (1) "the inconvenience and cost to the State and the courts," (2) "the surety's status, be it private or professional," (3) "the risk assumed by the sureties," and (4) "the diligence
 
 *64
 
 of sureties in staying abreast of the defendant's whereabouts prior to the date of appearance."
 
 Id.
 
 at 248,
 
 550 S.E.2d at 569
 
 (citations omitted).
 

 As for the weight of particular factors, we have specifically cautioned that "diligence alone will not constitute 'extraordinary cause,' for due diligence by a surety is expected."
 

 Id.
 

 (citation omitted). Nor "will the amount of expenses incurred by professional sureties due to a forfeiture" be sufficient in and of itself.
 

 Id.
 

 (citation omitted). A surety assumes the risk of expending resources to the extent of its foreseeable efforts.
 
 See
 

 Gonzalez-Fernandez,
 

 170 N.C.App. at 53
 
 ,
 
 612 S.E.2d at 154
 
 ("A surety's efforts to bring a defendant to North Carolina to appear in court are not extraordinary if it was foreseeable that the surety would have to expend those efforts to produce the defendant in court.");
 
 Vikre,
 

 86 N.C.App. at 199
 
 ,
 
 356 S.E.2d at 804
 
 ("It was entirely foreseeable ... that the sureties would be required to expend considerable efforts and money to locate [the defendant] in the event he failed to appear. The fact that the sureties incurred expenses in connection with the forfeiture does not necessarily constitute extraordinary cause.");
 
 see also
 

 Escobar,
 

 187 N.C.App. at 273
 
 ,
 
 652 S.E.2d at 699
 
 (concluding that the surety failed
 
 *832
 
 to demonstrate "extraordinary circumstances" where the surety was aware of the defendant's ties to Mexico but failed to stay abreast of his location after he was deported).
 

 Here, surety claims that the trial court's findings failed to address the determinative factors necessary to support its conclusion on "extraordinary circumstances." According to surety, the trial court was required to make specific findings regarding surety's efforts and expenses-an argument similar to the one we addressed in
 
 State v. Escobar.
 
 In
 
 Escobar,
 
 the trial court denied the surety's motion for relief from judgment of forfeiture, concluding that there were no extraordinary circumstances which entitled the surety to relief.
 
 Escobar,
 

 187 N.C.App. at 269, 273
 
 ,
 
 652 S.E.2d at 696, 699
 
 . In its order, the trial court found that the surety's efforts
 

 resulted in locating [the defendant] in the penal system of another jurisdiction, but did not result in the apprehension or capture of [the defendant] by authorities in that jurisdiction.... [The defendant]'s return to this jurisdiction is by writ based upon the continuing efforts of the District Attorney to prosecute [the defendant] on the original charges in this jurisdiction.
 

 Id.
 
 at 271,
 
 652 S.E.2d at 697-98
 
 . On appeal, we rejected the surety's argument that Rule 52 required the trial court to enter more specific findings about its efforts to locate the defendant, as " ' Rule 52(a)(1) does not require recitation of evidentiary facts.' "
 
 Id.
 
 at 271,
 
 652 S.E.2d at 698
 
 (quoting
 
 Chem. Realty Corp.,
 

 65 N.C.App. at 249
 
 ,
 
 310 S.E.2d at
 
 37 ). We determined instead that "[t]he trial court fulfilled its obligations under Rule 52(a)(1) because it made a specific finding of fact that [the surety]'s efforts resulted in locating Defendant, but the District Attorney was ultimately responsible for returning Defendant to Union County."
 
 Id.
 
 at 271,
 
 652 S.E.2d at 698
 
 .
 

 As in
 
 Escobar,
 
 here the trial court was not required to make "findings of fact specifying the numerous tasks completed" by surety in its effort to surrender defendant.
 
 Escobar,
 

 187 N.C.App. at 271
 
 ,
 
 652 S.E.2d at 698
 
 . The court's findings demonstrate that it considered factors relevant to an "extraordinary circumstances" analysis. Findings of Fact Nos. 6 and 7 show that surety surrendered defendant nearly two months after the final judgment date, which bears on surety's diligence. Finding of Fact No. 10 addresses surety's professional status in the bail bond profession. Finding of Fact Nos. 12 and 13 show that, before posting the bond, surety had notice of defendant's flight risk and it was foreseeable that
 
 *833
 
 surety would have to travel to other states to surrender defendant. And finally, Finding of Fact No. 14 shows that defendant was apprehended in Florida, where surety knew that defendant owned property. These findings were both relevant to and determinative of the ultimate issue regarding "extraordinary circumstances." To require a specific finding that surety sent six agents on several trips to three different states, for example, would be to require "a recitation of the evidentiary facts."
 
 Chem.
 

 *65
 

 Realty Corp.,
 

 65 N.C.App. at 249
 
 ,
 
 310 S.E.2d at 37
 
 . We conclude, therefore, that the trial court satisfied its obligation under Rule 52.
 

 D. Denial of Surety's Rule 59 Motion
 

 Finally, surety argues that the trial court abused its discretion in denying surety's Rule 59 motion. Similar to its Rule 52 argument, surety maintains that "the circumstances of defendant's surrender were extraordinary" and "the trial court did not consider and did not make any findings of fact regarding surety's efforts and expenses to produce [defendant] for trial...." Pointing to the court's Finding of Fact No. 15, surety further asserts that the court improperly "focused on surety's resources for recoupment of the bond if [defendant] did not appear," a factor which surety claims has "no bearing on the ultimate goal of producing the defendant for trial."
 

 After reviewing the trial court's conclusion without the support of Finding of Fact No. 15, we cannot say that the court's decision to deny surety's motion was "manifestly unsupported by reason" or was "so arbitrary that it could not have been the result of a reasoned decision."
 
 State v. Hennis,
 

 323 N.C. 279
 
 , 285,
 
 372 S.E.2d 523
 
 , 527 (1988). Surety's efforts, while taxing, were not unexpected. Defendant's property ownership in Massachusetts and Florida, coupled with the fact that he did not live in North Carolina, put surety on notice of defendant's flight risk. And as a professional bond agent, surety was especially aware of that risk. Surety's expenses were largely based on its travel to states where it knew defendant owned property and its continued willingness to trust the information from Roche and Romero. The fact that surety incurred substantial costs to surrender defendant does not warrant relief from judgment in this case.
 

 III. Conclusion
 

 Although the trial court's Finding of Fact No. 15 is not supported by competent evidence, this error does not warrant a reversal.
 
 See
 

 In re Estate of Mullins,
 

 182 N.C.App. 667
 
 , 670-71,
 
 643 S.E.2d 599
 
 , 601 (2007) ("In a non-jury trial, where there are sufficient findings of fact based on competent evidence to support the trial court's conclusions of law,
 
 *834
 
 the judgment will not be disturbed because of other erroneous findings which do not affect the conclusions." (quoting
 
 In re Estate of Pate,
 

 119 N.C.App. 400
 
 , 402-03,
 
 459 S.E.2d 1
 
 , 2-3 (1995) )). The court's remaining findings were both relevant and determinative of the ultimate issue regarding "extraordinary circumstances," and the court did not abuse its discretion in denying surety's Rule 59 motion.
 

 AFFIRMED.
 

 Judges HUNTER, JR. and DAVIS concur.
 

 [1]
 

 Although the trial court included this statement in its findings of fact, we agree with both surety and the Board that it is more properly characterized as a conclusion of law, as it requires "the exercise of judgment, or the application of legal principles...."
 
 In re Helms,
 

 127 N.C.App. 505
 
 , 510,
 
 491 S.E.2d 672
 
 , 675 (1997) (citations and quotation marks omitted).