IN THE SUPREME COURT OF NORTH CAROLINA

No. 292A22

Filed 28 April 2023

IN THE MATTER OF: H.B.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 285 N.C. App. 1 (2022), affirming an order entered on 19 August 2021 by Judge Vanessa E. Burton in District Court, Robeson County. Heard in the Supreme Court on 1 February 2023.

*J. Edward Yeager Jr. for petitioner-appellee Robeson County Department of Social Services; and Matthew D. Wunsche, GAL Appellate Counsel, for appellee Guardian ad Litem.*

*Benjamin J. Kull for respondent-appellant mother.*

DIETZ, Justice.

In this juvenile case, the trial court referenced a timeline introduced into evidence and expressly relied on that timeline for its determination. The court also made a key evidentiary finding that the timeline was "credible and reliable."

As explained below, this is a proper evidentiary finding because the trial court's order did not merely reference or recite a piece of evidence in the record. Instead, the trial court expressly evaluated that evidence, determined that it was credible, and stated that the court relied on that evidence to make findings of fact.

It is always a better practice for trial courts, in their written orders, to make

specific findings about what the facts are, rather than reciting or referencing evidence in the record. Nevertheless, the court's findings in this case contain proper evidentiary findings and support the trial court's conclusion of law. Accordingly, we affirm the decision of the Court of Appeals, which in turn affirmed the trial court's order.

## Facts and Procedural History

Respondent is the mother of Helena.[1] In June 2019, when Helena was four years old, the Robeson County Department of Social Services filed a petition alleging that Helena was neglected and dependent. DSS had been investigating a child protective services report involving respondent's newborn child, who had tested positive for cocaine and marijuana. Respondent told a social worker that she did not have her own residence and did not have the resources to care for her newborn.

During this time, Helena lived with her paternal grandmother. A social worker made a visit to Helena's grandmother's home and found several children, unsupervised and playing with dangerous objects. The social worker had a discussion with Helena's grandmother about the need for supervision. On a return trip, the social worker saw a group of children playing in the road outside of the grandmother's home and narrowly avoided hitting a small child—later discovered to be Helena. These events led DSS to file the initial juvenile petition.

The trial court placed Helena and her newborn sibling in nonsecure custody.

---

[1] We use a pseudonym to protect the juvenile's identity and for ease of reading.

Respondent agreed to a case plan that required her to complete substance abuse treatment and to maintain stable housing and employment.

Later in 2019, the trial court adjudicated both children as neglected based largely on respondent's failure to complete the goals in the case plan. The trial court found that respondent had not completed her substance abuse assessment, did not have her own housing, and made intentional efforts to avoid the social workers who were overseeing her case.

After a review hearing early in 2020, the trial court found that social workers had not been able to contact respondent since October 2019. The trial court also found that respondent continued to require substance abuse treatment and mental health treatment and lacked stable housing and employment.

In July 2020, the trial court entered its first permanency planning order. The court found that respondent was not regularly visiting Helena and was not working on her case plan. The court also found that social workers had made numerous, unsuccessful attempts to contact or locate respondent. Respondent indicated a desire to relinquish her parental rights to Helena's grandmother. The court determined that relinquishment was not possible because of the grandmother's own living situation and history with social services. The trial court thus set a primary permanent plan of reunification with a concurrent plan of adoption.

Following a March 2021 hearing, the trial court entered a second permanency planning order. The court again found that respondent had not consistently visited

Helena and had not made herself available to social workers. Although the order states that the court "does not change the plan," the court directed DSS "to primarily focus its efforts on the plan of adoption" with a secondary plan of guardianship with a court-approved caretaker.

In April 2021, DSS filed a petition to terminate respondent's parental rights to Helena. At the termination hearing, social worker Lataysha Carmichael testified about her work on respondent's case. During her testimony, DSS introduced a timeline into evidence. The timeline summarized DSS's interactions with respondent and reflected much of the key testimony from Carmichael. The timeline is titled "Affidavit" and is signed by Carmichael and notarized. Respondent did not object to the admission of the timeline:

> [DSS Counsel:]: Have you created — have you or the Department created a time line of efforts to work with [respondent] to reunite the family?
>
> [Carmichael:] I have.
>
> . . . .
>
> Q. And to your understanding are those facts in that affidavit true and accurate?
>
> A. Yes.
>
> Q. It's your understanding it is an accurate representation of all the efforts associated — strike that. Is it a recitation of the efforts by the Department to reunite this family?
>
> A. Yes.
>
> [DSS Counsel]: Your Honor, we would ask that Exhibit D

be accepted into evidence.

[Respondent's Counsel]: No objection.

. . . .

THE COURT: All right. It's admitted.

After the hearing, the trial court entered a written order terminating respondent's parental rights, with separate adjudicatory and dispositional sections. In the adjudication portion of the order, the trial court made the following relevant findings of fact:

> 7. That the Court takes judicial notice of the underlying Juvenile File 19JA173 and the Department's efforts to work with [respondent] . . . .
>
> 8. The mother, [respondent] has willfully left the child in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. . . .
>
> . . . .
>
> 15. The Court relies on and accepts into evidence the Timeline, marked DSS Exhibit '__", in making these findings and finds the said report to [be] both credible and reliable.

Based on these findings, the trial court concluded that "grounds exist based on clear, cogent and convincing evidence, to terminate the parental rights of the Respondent mother" because respondent "has willfully left the child in the legal and physical custody of the Robeson County Department of Social Services from June 11,

2019 until the present, for over 12 months without making reasonable progress to correct the conditions that led to the removal of the child." The court then determined that termination of parental rights was in Helena's best interests.

Respondent timely appealed to the Court of Appeals. In a divided opinion, the Court of Appeals majority affirmed the trial court's order, holding that the trial court properly terminated respondent's parental rights for willful failure to make reasonable progress under N.C.G.S. § 7B-1111(a)(2). *In re H.B.*, 285 N.C. App. 1, 17 (2022). The dissent asserted that there were insufficient findings to support the trial court's adjudication under subsection 7B-1111(a)(2); that the trial court's best interests findings were not supported by the record; and that the trial court improperly permitted DSS to amend the juvenile petition during the hearing to add an additional ground for termination under N.C.G.S. § 7B-1111(a)(9). *Id.* at 20–30 (Wood, J., dissenting).

Respondent appealed to this Court based on the dissent. *See* N.C.G.S. § 7A-30(2) (2021).

## Analysis

### I. Adjudication

We begin with respondent's challenge to the findings of fact in the adjudication portion of the termination order. Respondent argues, based on the reasoning of the Court of Appeals dissent, that the trial court's findings of fact are insufficient to support termination of parental rights for willful failure to make reasonable progress

under N.C.G.S. § 7B-1111(a)(2).

The crux of this issue is an exhibit that the parties referred to at the hearing as a "timeline" of respondent's interactions with DSS and its social workers. The exhibit was prepared by the DSS social worker assigned to respondent's case and chronicles DSS's involvement in this matter up to the time of the termination hearing.

The timeline demonstrates that Helena was in DSS custody for far more than a year; that respondent continually missed scheduled visits with Helena; that respondent continually failed to attend substance abuse and mental health appointments; that respondent avoided contact with social workers; and that respondent was aware of the scheduled visits with Helena and of the appointments required by respondent's case plan, primarily through conversations with Helena's grandmother, but simply failed to attend without explanation.

Ordinarily, when a trial court intends to find facts mirroring those in an exhibit, the best practice is to set out those findings in the written order. Here, for example, the trial court could have made findings that respondent missed scheduled visits with her daughter on each of the many specific dates set out in the timeline. The court then could have made similar findings with respect to the missed substance abuse and mental health appointments, with respect to respondent's lack of explanation for her failure to attend these meetings, and so on.

Instead, the trial court incorporated the timeline by reference into the order.

In Finding of Fact 15, the trial court stated that it "relies on and accepts into evidence" this exhibit and finds it to be "both credible and reliable":

> 15. The Court relies on and accepts into evidence the Timeline, marked DSS Exhibit '__", in making these findings and finds the said report to [be] both credible and reliable.

Respondent argues that Finding of Fact 15 is deficient because the trial court "made no findings of fact based on the content of that exhibit" and "the trial court's brief observations about the exhibit accomplish nothing."

We do not agree. The key portion of Finding of Fact 15 is the trial court's finding that the timeline and its contents are "credible and reliable." This distinguishes Finding of Fact 15 from findings in which a trial court merely references evidence in the record. These mere references—such as recitations of witness testimony at the hearing—are not proper evidentiary findings standing alone. *In re C.H.*, 381 N.C. 745, 759 (2022). But this sort of referential finding is sufficient if it also includes "an indication concerning whether the trial court deemed the relevant portion of the testimony credible." *In re A.E.*, 379 N.C. 177, 185 (2021) (cleaned up). When a trial court makes a credibility determination about recited evidence, that transforms the recited evidence from a "mere recitation" into a proper "evidentiary finding." *Id.* at 186.

Applying this principle here, Finding of Fact 15 is a proper evidentiary finding because the trial court did not merely accept and rely upon the timeline and its contents; the court went further and expressly evaluated those contents and

determined that they were credible and reliable based on other evidence received at the hearing.

We stress that our holding today is not an endorsement of this sort of fact finding. As noted above, the better practice always will be to make specific, express findings in the written order about what the trial court determined the facts to be, rather than referencing evidence in the record and stating that the referenced evidence is credible. Nevertheless, Finding of Fact 15 is a proper evidentiary finding that incorporates all the contents of the timeline as the trial court's findings of fact.

Although respondent challenged the sufficiency of Finding of Fact 15, respondent did not argue that this timeline and its contents are unsupported by clear, cogent, and convincing evidence in the record. Thus, Finding of Fact 15 is binding on this court. That finding, together with the trial court's other findings, support the trial court's conclusion of law that respondent willfully left her child in DSS custody for more than 12 months without making reasonable progress to correct the conditions that led to the child's removal. Accordingly, the Court of Appeals properly affirmed the trial court's adjudication under N.C.G.S. § 7B-1111(a)(2).[2]

---

[2] The Court of Appeals also made the following statement in its analysis:

> The trial court also makes a purported conclusion of law, which is better characterized as a finding of fact, in paragraph 3, subsection b, that reads: "The Respondent mother . . . has willfully left the child in the legal and physical custody of [DSS] from June 11, 2019 until the present, for over 12 months without making reasonable progress to correct the conditions that led to the removal of the child[.]

## II.    Disposition

We next address respondent's challenge to the trial court's disposition portion of the trial court's order. After a trial court determines that one or more grounds exist for terminating parental rights, the court moves on to the dispositional stage, where the court assesses whether termination of parental rights is in the child's best interests. N.C.G.S. § 7B-1110 (2021).

We review the trial court's best interests determination at the disposition stage solely for abuse of discretion. *In re Z.L.W.*, 372 N.C. 432, 435 (2019). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re C.S.*, 380 N.C. 709, 712 (2022) (cleaned up).

In evaluating a child's best interests, trial courts are required to consider a series of enumerated statutory criteria:

> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the

---

*In re H.B.*, 285 N.C. at 15–16 (emphasis omitted). This is not a correct statement. This portion of the trial court's order, contained in Conclusion of Law 3(b), is a conclusion of law that tracks the statutory language in N.C.G.S. § 7B-1111(a)(2). We must treat it as such. *See, e.g.*, *In re J.C.J.*, 381 N.C. 783, 793 n.3 (2022). We therefore modify this portion of the Court of Appeals' decision as contrary to well-established law.

> proposed adoptive parent, guardian, custodian, or other permanent placement.

(6) Any relevant consideration.

N.C.G.S. § 7B-1110(a).

The trial court must consider each of these statutory factors, but the court is "only required to make written findings regarding those factors that are relevant." *In re A.R.A.*, 373 N.C. 190, 199 (2019). "A factor is relevant if there is conflicting evidence concerning the factor." *In re E.S.*, 378 N.C. 8, 12 (2021).

"We review the trial court's dispositional findings of fact to determine whether they are supported by the evidence received before the trial court." *In re L.G.G.*, 379 N.C. 258, 272 (2021). Under this standard, we cannot reweigh the evidence or judge its credibility; we must uphold that trial court's fact findings if they are supported by *any* evidence in the record. *In re S.M.*, 380 N.C. 788, 791 (2022).

Respondent, based on the dissent in the Court of Appeals, challenges the trial court's finding that "there is no bond between the minor child and [respondent]." Respondent contends that no evidence supports this finding. This is wrong. There was *some* evidence that respondent had no bond with her child, including respondent's repeated, consistent failure to visit her child and her failure to make any efforts to contact or care for her child for a long period of time.

To be sure, there was counterevidence as well, such as the report of the guardian ad litem, which stated that the child "still has a bond" with respondent. But under the applicable standard of review, we cannot weigh this competing evidence.

-11-

The trial court, as the fact finder, "is the sole judge of the credibility and weight to be given to the evidence, and it is not the role of the appellate court to substitute its judgment for that of the trial court." *In re N.P.*, 374 N.C. 61, 66 (2020). The trial court, examining all of the competing evidence in this case, credited most of the guardian ad litem's report but rejected that particular assertion, along with the other evidence indicating a bond between respondent and her child. Instead, the court credited the testimony and evidence indicating respondent had no bond with her child, and made a corresponding finding of fact. That finding is supported by at least some evidence in the record and is therefore binding on appeal.

Respondent does not argue that the trial court's best interests determination is otherwise infirm, and it is not. The trial court made findings based on the relevant statutory criteria and its determination, in light of those findings, was well within the trial court's sound discretion. We therefore reject respondent's challenge to the trial court's disposition order.

## III. Amendment of juvenile petition

Finally, respondent argues that the trial court erred by permitting DSS to amend the juvenile petition during the termination hearing. This amendment added allegations under N.C.G.S. § 7B-1111(a)(9), which applies when "parental rights of the parent with respect to another child of the parent have been terminated involuntarily by a court of competent jurisdiction and the parent lacks the ability or

willingness to establish a safe home."

Any error in amending the petition is harmless in light of our holding above. When "the trial court finds multiple grounds on which to base a termination of parental rights, and an appellate court determines there is at least one ground to support a conclusion that parental rights should be terminated, it is unnecessary to address the remaining grounds." *In re E.H.P.*, 372 N.C. at 395 (cleaned up). Because we hold that the trial court properly terminated respondent's parental rights under N.C.G.S. § 7B-1111(a)(2) for willfully failing to make reasonable progress, there is no need to address the trial court's findings and conclusions concerning the other grounds. Thus, even if the trial court erred by permitting an amendment that added an additional ground for termination, that error was harmless.

**Conclusion**

We modify and affirm the judgment of the Court of Appeals.

MODIFIED AND AFFIRMED.

Justice MORGAN dissenting.

Although I agree with the majority that potentially there was ample evidence in the record from which the trial court in this case *could* have made findings to support its termination of respondent-mother's parental rights, I disagree with the majority that the trial court fulfilled its factfinding duty by making findings with sufficient specificity from which an appellate forum such as this Court could determine whether those findings of fact, in turn, supported the trial court's ultimate findings of fact and conclusions of law. I also take issue with the majority's conclusion that the trial court did not abuse its discretion at the dispositional stage in finding that there was no bond between Helena and respondent-mother, when all of the competent record evidence indicated that a parent-child bond certainly did exist. I would vacate the trial court's order and remand the case for further findings by the trial court.

## I.    Adjudication

I agree with respondent-mother and with the dissenting view of the Court of Appeals that the trial court did not make adequate material findings of fact upon which to support its ultimate findings of fact and conclusions of law at the adjudicatory stage of respondent-mother's termination of parental rights proceeding. This Court reviews a trial court's findings at the adjudicatory stage in order to determine whether the trial court's findings of fact are supported by "clear and convincing evidence," *In re W.K.*, 376 N.C. 269, 277 (2020) (citing N.C.G.S. § 7B-

1111(b) (2019)), with de novo review as to "whether those findings support the trial court's conclusions of law[,]" *In re B.O.A.*, 372 N.C. 372, 379 (2019); *see also In re J.S.*, 374 N.C. 811, 814 (2020). The appellate courts, however, are not permitted to supplement the trial court's findings of fact with additional or different findings that were not actually made by the trial court, although they may have been indicated by record evidence. *See In re Montgomery*, 311 N.C. 101, 111 (1984) ("[W]e must review the evidence in order to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law . . . [because] appellate courts should refrain from accepting as facts of a case[ ] findings that are not part of the record on appeal."); *Coble v. Coble*, 300 N.C. 708, 712–13 (1980) ("It is not enough that there may be evidence in the record sufficient to support findings which *could have been made*. The trial court must itself determine what pertinent facts are actually established by the evidence before it . . . .").

This standard recognizes the statutory duty of the trial court, when determining a legal matter on the case's facts without a jury, such as in a termination of parental rights proceeding, to "find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." N.C.G.S. § 1A-1, Rule 52(a)(1) (2021).[1] Under Rule 52(a), three "separate and distinct acts" are required of the trial court: it must "(1) find the facts specially, (2) state

---

[1] This Court has held that N.C.G.S. § 7B-1109(e) "places a duty on the trial court as the adjudicator of the evidence" which is equivalent to that imposed by Rule 52(a)(1). *In re T.N.H.*, 372 N.C. 403, 407 (2019) (citing N.C.G.S. § 1A-1, Rule 52(a)(1) (2019)).

separately the conclusions of law resulting from the facts so found, and (3) direct the entry of the appropriate judgment." *Quick v. Quick*, 305 N.C. 446, 451 (1982). The proper recognition and implementation of this principle is critical, because as this Court has reasoned:

> The trial judge becomes both judge and juror, and it is his duty to consider and weigh all the competent evidence before him. He passes upon the credibility of the witnesses and the weight to be given their testimony and the reasonable inferences to be drawn therefrom. If different inferences may be drawn from the evidence, he determines which inferences shall be drawn and which shall be rejected.

*Knutton v. Cofield*, 273 N.C. 355, 359 (1968) (citations omitted). Although the trial court is not required to recite "*all* evidentiary facts presented at [the] hearing" in its order, it is required to find "specially . . . those material and ultimate facts from which it can be determined whether the findings are supported by the evidence and whether they support the conclusions of law reached." *Quick*, 305 N.C. at 451 (emphasis added). "In other words, a proper finding of facts requires a specific statement of the facts on which the rights of the parties are to be determined, and those findings *must be sufficiently specific to enable an appellate court to review the decision and test the correctness of the judgment.*" *Id.* (emphasis added).

The trial court in the present case made the following fourteen findings of fact when the tribunal entered its written termination order which terminated the parental rights of respondent-mother with respect to Helena on 19 August 2021:

1. The name of the juvenile is [Helena], as evidenced by the child's Birth Certificate attached to the filed Petition, which is to be made part of this paragraph as if fully set forth herein.

2. The child, [Helena], currently resides in a licensed foster home, under the supervision, direction and custody of the Robeson County Department of Social Services.

3. The mother of the child is [respondent-mother]. [Respondent-mother] was served with a copy of the Petition to Terminate Parental Rights on April 8, 2021. [Respondent-mother] had notice of this proceeding today.

4. That there is no father listed on the child's birth certificate. That an unknown father was served by process of publication.

5. That a Juvenile Petition and Non-Secure Custody Order were filed regarding the minor child, on June 11, 2019.

6. On September 12, 2019, the [c]ourt adjudicated the child, [Helena], as a neglected juvenile pursuant to N.C.G.S. 7B-101 (15).

7. That the Court takes judicial notice of the underlying Juvenile File 19JA173 and the Department's efforts to work with the Respondent mother . . . [and] the Respondent Unknown father of the child . . . .

8. The mother, [respondent-mother] has willfully left the child in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. There is a high likelihood that the neglect would continue.

10. The mother, [respondent-mother] has neglected the juvenile in that the juvenile lives in an environment injurious to the juvenile['s] welfare.[2]

11. The mother, [respondent-mother] failed to pay a reasonable portion of the costs of the children's care for a continuous period of six months immediately preceding the filing of the petition, although physically and financially able to do so.

12. The parental rights with respect to another child of the parent have been terminated involuntarily by a court of competent jurisdiction and the parent lacks the ability or willingness to establish a safe home.

13. That the unknown father, has willfully left the child in foster care for more than twelve months without showing to the satisfaction of the Court that reasonable progress under the circumstances has been made in correcting the conditions that led to the child's removal; has failed to file an affidavit of paternity in a central registry maintained by the Department of Health and Human Services; [has not] legitimated the juvenile pursuant to provisions of G.S. 49-10, G.S. 49-12.1, or filed a petition for this specific purpose; [has not] legitimated the juvenile by marriage to the mother of the juvenile; has not provided substantial financial support or consistent care with respect to the juvenile and mother; has not established paternity through G.S. 49-14, 110-132, 130A-101, 130A-118, or other judicial proceeding.

14. As such, and based on clear, cogent and convincing evidence, grounds exist to terminate the parental rights of the Respondent mother . . . and the Respondent unknown father.

15. The Court relies on and accepts into evidence the Timeline, marked DSS Exhibit '__", in making these

---

[2] The trial court did not include a Finding of Fact 9 in its order.

findings and finds the said report to [be] both credible and reliable.

Based upon these findings of fact, the trial court drew these conclusions of law:

1. That the Court has jurisdiction over the parties and subject matter herein pursuant to Article 11 of Chapter 7B of the North Carolina General Statutes.

2. That the Petitioner, the Robeson County Department of Social Services, is authorized to file this petition pursuant to North Carolina General Statutes 7B-1103(3) for the reason that the Department has been awarded custody of the minor child, pursuant to Custody Orders entered by the undersigned, which are part of the underlying Juvenile File, 19JA173, and made part of this paragraph as if fully set forth herein.

3. That grounds exist based on clear, cogent and convincing evidence, to terminate the parental rights of the Respondent mother . . . and Respondent unknown father, pursuant to North Carolina General Statute[s] 7B-1111 in that:

   a. The juvenile has been placed in the custody of the Robeson County Department of Social Services for a continuous period of six months next preceding the filing of the [p]etition, and

   b. The Respondent mother . . . has willfully left the child in the legal and physical custody of the Robeson County Department of Social Services from June 11, 2019 until the present, for over 12 months without making reasonable progress to correct the conditions that led to the removal of the child; and

   c. The Respondent mother . . . has neglected the juvenile in that the juvenile live[s] in an environment injurious to the juvenile['s] welfare; and

    d.  The Respondent mother . . . has willfully failed to pay a reasonable portion of the costs of the child's care for a continuous period of six months immediately preceding the filing of the petition, although physically and financially able to do so; and

    e.  The parental rights of the [parent] with respect to another child of the parent have been [terminated] involuntarily by a court of competent jurisdiction and the parent lacks the ability or willing[ness] to establish a safe home; and

    f.  That the unknown father, has willfully left the child in foster care for more than twelve months without showing to the satisfaction of the Court that reasonable progress under the circumstances has been made in correcting the conditions that led to the child's removal; has failed to file an affidavit of paternity in a central registry maintained by the Department of Health and Human Services; [has not] legitimated the juvenile pursuant to provisions of G.S. 49-10, G.S. 49-12.1, or filed a petition for this specific purpose; [has not] legitimated the juveniles by marriage to the mother of the juveniles; has not provided substantial financial support or consistent care with respect to the juvenile and mother; has not established paternity through G.S. 49-14, 110-132, 130A-101, 130A-118, or other judicial proceeding.

Among these conclusions, the trial court ultimately found four grounds to terminate respondent-mother's parental rights in its written order: (1) that respondent-mother had neglected Helena by allowing her to live in an environment injurious to her welfare pursuant to N.C.G.S. § 7B-1111(a)(1); (2) that respondent-mother had willfully left Helena in foster care or placement outside the home for more than twelve months without showing that reasonable progress had been made to correct those conditions which had led to her removal pursuant to N.C.G.S. § 7B-1111(a)(2); (3)

that respondent-mother had willfully failed to pay a reasonable portion of the cost for Helena's care for a continuous period of six months preceding the filing of the petition although physically and financially able to do so pursuant to N.C.G.S. § 7B-1111(a)(3); and (4) that the respondent-mother's parental rights with respect to another child[3] had been terminated involuntarily and that respondent-mother lacked the ability or willingness to establish a safe home pursuant to N.C.G.S. § 7B-1111(a)(9). *See* N.C.G.S. § 7B-1111(a)(1)–(3), (9) (2021).

I disagree with the majority's determination that the trial court's findings of fact were premised on clear, cogent, and convincing evidence in order to establish the existence of grounds to terminate respondent-mother's parental rights. The trial court's findings were woefully deficient and, while the evidence in the record possibly may have amply supported sufficient findings of fact to substantiate grounds for the termination of respondent-mother's parental rights, the majority artificially bolsters the trial court's inadequate findings with an unfortunate relaxation of this Court's standards while simultaneously augmenting the trial court's shallow findings. Curiously, the majority readily acknowledges the trial court's failure to comply with the criteria for acceptable findings of fact, electing to couch the trial court's shortcomings in articulating sound findings as the forum's mere neglect to follow "the better practice" or the "best practice" of crafting proper findings of fact, instead of deeming the findings here to fall short of our stated principle that a proper finding of

---

[3] Helena's younger brother A.L.

facts requires a sufficiently specific statement of the facts. As a result, I view the trial court's material findings of fact to be inadequate to sufficiently support its ultimate facts, and, in turn, the trial court's conclusions of law are faultily reached.

"Findings of fact are statements of what happened in space and time." *State ex rel. Utils. Comm'n v. Eddleman*, 320 N.C. 344, 351 (1987). "Facts are things in space and time that can be objectively ascertained by one or more of the five senses or by mathematical calculation" and that, "in turn, provide the bases for conclusions." *State ex rel. Utils. Comm'n v. Pub. Staff*, 322 N.C. 689, 693 (1988) (citing *Eddleman*, 320 N.C. at 351). Meanwhile, "any determination requiring the exercise of judgment or the application of legal principles is more properly classified a conclusion of law." *State v. Sparks*, 362 N.C. 181, 185 (2008) (quoting *In re Helms*, 127 N.C. App. 505, 510 (1997)). "Ultimate facts are those found in that vaguely defined area lying between evidential facts on the one side and conclusions of law on the other." *Woodard v. Mordecai*, 234 N.C. 463, 472 (1951). "Ultimate facts are the final resulting effect reached by processes of logical reasoning from the evidentiary facts." *In re Anderson*, 151 N.C. App. 94, 97 (2002) (quoting *Appalachian Poster Advert. Co. v. Harrington*, 89 N.C. App. 476, 479 (1988)).

The trial court's findings of material fact, findings of ultimate fact, and conclusions of law comprised an amalgamation of cluttered entries which do not afford meaningful appellate review. Except for the initial six findings of fact and the first two conclusions of law which combine to address jurisdiction and standing, in

my view, none of the tribunal's findings of fact are sufficient to support its conclusions of law; consequently, the resulting conclusions of law are insufficient to support the trial court's termination of respondent-mother's parental rights.

There are several manifestations of these inadequacies in the trial court's order here. For example, Findings of Fact 8, 10, 11, and 12 are not findings of fact as contemplated by our aforementioned appellate court precedents because they are mere regurgitations of the relevant statutory language. Hence, they are plainly insufficient to allow this Court to determine whether the trial court formed its conclusions through the processes of logical reasoning and based on the specific evidentiary record before it. In *Coble*, after vacating an order requiring a mother to provide partial child support due to inadequate findings of fact by the trial court and remanding the case, we explained the outcome in this manner:

> Our decision to remand this case for further evidentiary findings is not the result of an obeisance to mere technicality. *Effective appellate review of an order entered by a trial court sitting without a jury is largely dependent upon the specificity by which the order's rationale is articulated.* Evidence must support findings; findings must support conclusions; conclusions must support the judgment. Each step of the progression must be taken by the trial judge, in logical sequence; each link in the chain of reasoning must appear in the order itself. *Where there is a gap, it cannot be determined on appeal whether the trial court correctly exercised its function to find the facts and apply the law thereto.*

300 N.C. at 714 (emphases added). It is this Court's responsibility, when called upon to examine a trial court's order, to ensure that the decree at issue comports with

required standards and principles. "Accordingly, this Court reviews the termination order to determine whether the trial court made sufficient factual findings to support its ultimate findings of fact and conclusions of law, regardless of how they are classified in the order." *In re Z.A.M.*, 374 N.C. 88, 97 (2020); *see also In re A.H.F.S.*, 375 N.C. 503, 510 (2020) ("Regardless of whether [a trial court's determination of willfulness] is classified as an ultimate finding of fact or a conclusion of law, it still must be sufficiently supported by the evidentiary findings of fact."). Therefore, a trial court's findings must amount to more "than a recitation of allegations. They must be the 'specific ultimate facts . . . sufficient for the appellate court to determine that the judgment is adequately supported by competent evidence.' " *In re Anderson*, 151 N.C. App. at 97 (alteration in original) (quoting *Montgomery v. Montgomery*, 32 N.C. App. 154, 156–57 (1977)).

Based upon these well-established guideposts for appellate review of a trial court's order—particularly an order which contains such far-reaching consequences as the termination of a parent's rights to a child—it is difficult to comprehend the majority's cavalier approach that the trial court's order in the present case merely constitutes an infraction of "better" or "best" practices, when Findings of Fact 8, 10, 11, and 12 here can hardly be rationalized to evince the trial court's engagement in the processes of logical reasoning required at an adjudicatory hearing. *See In re J.W.*, 241 N.C. App. 44, 45 ("At an adjudicatory hearing, the trial court must, *through processes of logical reasoning, based on the evidentiary facts before it*, find the ultimate

facts essential to support the conclusions of law." (emphasis added) (quoting *In re O.W.*, 164 N.C. App. 699, 702 (2004))), *disc. review denied*, 368 N.C. 290 (2015). My application of the customary guideposts for appellate review of a trial court's order does not support the majority's satisfaction with the identified findings of fact that these findings exhibited a process of logical reasoning by the trial court when they amount only to near-verbatim recitations of the relevant statutory language, with no reference to the particular evidentiary facts or circumstances of the case which were before the trial court. Therefore, I would hold that Findings 8, 10, 11, and 12 are not sufficient determinations upon which the trial court could have drawn its conclusions of law because these insufficient findings preclude effective appellate review as to whether the trial court correctly exercised its function to find the specific facts of the case and to apply the law to such facts.

In its Finding of Fact 7, the trial court "takes judicial notice of the underlying Juvenile File 19JA173 and the Department's efforts to work with the Respondent mother . . . [and] the Respondent Unknown father of the child." As previously observed and substantiated in this viewpoint, a determination such as Finding of Fact 7 is an insufficient finding under *Quick* because no fact has been specially found, with no material fact established or ultimate fact reached from which it can be determined whether the finding is supported by the evidence. *See Quick*, 305 N.C. at 451. Additionally, such a finding which is based upon a trial court's judicial notice of an underlying case file fails to derive any factual determinations from it which could

be properly reviewed on appeal. *Cf. In re J.C.M.J.C.*, 268 N.C. App. 47, 57 (2019) ("To allow the trial court to find adjudicatory facts simply by taking judicial notice of its prior findings . . . risks insulating the adjudicatory findings from appellate review and undermines the procedural safeguards for adjudications prescribed by [the General Statutes]").

In like fashion, the trial court's Finding of Fact 15—the entry which attracts the majority's primary focus—is similarly lacking in that it is bereft of the necessary emphasized features which properly qualify it to be a sufficient finding of fact and an element of an actual ultimate fact which, in turn, could lead to a legally acceptable conclusion of law. Finding of Fact 15 indicated that the trial court "relies on and accepts into evidence the Timeline, marked DSS Exhibit '___", in making these findings and finds the said report to [be] both credible and reliable." Although the trial court clearly fails to identify what, if any, actual facts that it found in reliance on this Timeline, nonetheless the majority expressly declares that Finding of Fact 15 is supported by the undisputed evidentiary standard of "clear, cogent and convincing" by virtue of the majority's willingness to gratuitously scour the records in order to fortify the finding, despite this Court's unequivocal admonition in *In re Montgomery* against such an act which the majority has implemented.

Based upon these observations, I would vacate the trial court's written termination order and remand the case for further and fuller development of sufficient findings of fact in order to permit effective appellate review with regard to

the properness of the trial court's ultimate findings of fact and resulting conclusions of law.

## II.     Disposition

I also agree with the positions of respondent-mother and the lower appellate court's dissent that the trial court abused its discretion by entering a finding that there was no bond between Helena and respondent-mother. This Court reviews a trial court's determination at the dispositional stage of a termination of parental rights proceeding for abuse of discretion, which requires an appellate court to defer to the lower court's decision "unless it is manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision." *In re Z.A.M.*, 374 N.C. at 100 (quoting *Briley v. Farabow*, 348 N.C. 537, 547 (1998)). "The standard of review that applies to an assignment [of error] challenging a dispositional finding is whether the finding is supported by competent evidence." *In re C.M.*, 183 N.C. App. 207, 212 (2007). "The court's dispositional findings are binding on appeal if supported by any competent evidence[,]" *In re J.B.*, 379 N.C. 233, 235–36 (2021), even if there was evidence presented that would support a finding to the contrary, *In re K.S.*, 183 N.C. App. 315, 323 (2007).

In relevant part, the trial court's written order in this case contains the following dispositional finding: "[T]here is no bond between the minor child and the Respondent mother." Despite the majority's representations to the contrary, this finding was not supported by any competent evidence. It is noteworthy that the

Robeson County Department of Social Services' own witness testified during the termination of parental rights hearing that Helena recognized respondent-mother as her mother, that Helena was happy to see respondent-mother when visits between the two of them occurred, and that said visits "[w]ent well." Additionally, the guardian ad litem's report which was submitted as evidence to support the petition to terminate parental rights specifically and candidly stated that "[e]ven though [Helena had] been in foster care for over two years, she still [had] a bond with her mother" and that Helena loved and missed her mother. While the majority heavily relies upon its depiction of the record evidence that there was *some* evidence presented which tended to indicate that Helena's mother did not have a *strong* maternal bond with Helena, nonetheless there was still *no* evidence presented which showed that Helena and respondent-mother shared *no* bond whatsoever as indicated by the trial court's findings. *Cf. In re R.G.L.*, 379 N.C. 452, 464–65 (2021) (holding that a trial court's finding that a minor child had "absolutely no bond" with his parents was not supported by the evidence when the evidence tended to show that the respondent-parents attended visits with the child and a social worker testified that the child and his mother shared a bond even though evidence was presented that the respondent-parents were repeatedly tardy for and demonstrated a lack of engagement with the aforementioned visits). This is yet another example, demonstrated in the appellate review of the disposition phase of the proceedings just as it was in the adjudication phase, of the majority's unfortunate penchant for

excusing the trial court's failure to adhere to established standards for rooting the lower court's findings in the record evidence through the majority's willingness to relax our clear principles in this area of the law.

Because "the weight assigned to . . . the various dispositional factors in N.C.G.S. § 7B-1110(a)[ ] is the sole province of the trier of fact[,]" *In re B.E.*, 375 N.C. 730, 749, (2020), it is impermissible upon this dissenting view to speculate as to whether the trial court would have made the same dispositional determination in the absence of the trial court's finding that Helena and respondent-mother shared no bond. I would therefore remand this case to the trial court based on the disposition phase as well.

## III.  Conclusion

A trial court must make sufficiently specific material findings of fact to support its ultimate findings of fact and conclusions of law such that an appellate court can determine whether the trial court has properly exercised the forum's function to find the facts specially and to apply the pertinent law to the findings of fact. In the absence of such findings which serve as the foundation for the remainder of the elements of a trial court's proper order as illustrated in *Quick*, I would vacate the trial court's order and remand for further findings.

I respectfully dissent.

Justice EARLS joins in this dissenting opinion.